Scott M. Riemer (SR 5005)
Matthew Maddox (MM 8359)
RIEMER HESS LLC
Attorneys for Plaintiff
275 Madison Avenue, 26th Floor
New York, New York 10016
(212) 297-0700
sriemer@riemerhess.com
mmaddox@riemerhess.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL J. GRAZIANO,<br><br>                         Plaintiff,<br><br>        -against-<br><br>FIRST UNUM LIFE INSURANCE COMPANY,<br><br>                         Defendant. | Index No. 1:21-cv-2708<br><br>**<u>COMPLAINT</u>**<br><br>ECF CASE |

Plaintiff Michael J. Graziano, by his attorneys Riemer Hess LLC, complaining of unlawful conduct by Defendant First Unum Life Insurance Company ("Unum"), alleges:

1.      This is an action for benefits arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001, et seq. and to recover prejudgment interest, attorneys' fees, and costs.

2.      This Court has subject matter jurisdiction pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.  Under Section 502(f) of ERISA, 29 U.S.C. § 1132(f), this Court has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

3.     Venue is properly in this District pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the breaches took place in this District and Defendant resides in or may be found in this District.

## MR. GRAZIANO'S PARTICIPATION IN THE
## LONG TERM DISABILITY PLAN

4.     Mr. Graziano was employed as a Senior Property Underwriter by Swiss Re America Holding Corporation ("Swiss Re").

5.     At all relevant times, Graziano was and is a participant within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7), in a Long Term Disability Plan provided by Graziano's employer, Swiss Re (the "LTD Plan").

6.     As an employee of Swiss Re, Graziano was provided with long term disability insurance coverage under the LTD Plan.

7.     At all relevant times, the LTD Plan is and has been an "employee welfare benefit plan" within the meaning of Section 3(1) of ERISA, 29 U.S.C. § 1002(1).

8.     At all relevant times, Unum is and has been the claims administrator of the LTD Plan within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

9.     At all relevant times, Unum has been a fiduciary within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

10.     Long term disability benefits under the LTD Plan have been insured in accordance and pursuant to Policy Number 405256, issued by Unum.

11.     The LTD Plan defines "Disability" or "Disabled" as follows:

You are disabled when Unum determines that:

- you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and

- you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

After 24 months of payments, you are disabled when Unum determines that, due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience. You must be under the regular care of a physician in order to be considered disabled.

12.     The LTD Plan defines "Material and Substantial Duties" as those duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified.

13.     The LTD Plan Defines "Regular Occupation" as follows:

Regular Occupation means the occupation you are routinely performing when your disability begins.  Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

14.     The LTD Plan Defines "Gainful Occupation" as follows:

An occupation that is or can be expected to provide you with an income within 12 months of your return to work, that exceeds:

- 80% of your indexed monthly earnings, if you are working; or

- 60% of your indexed monthly earnings, if you are not working.

## <u>MR. GRAZIANO'S PARTICIPATION IN THE LIFE INSURANCE PLAN</u>

15.     As an employee of Swiss Re, Graziano was also provided with life insurance coverage under Swiss Re's Group Life Insurance Plan (the "Life Insurance Plan").

16.     Mr. Graziano was and is a participant within the meaning of Section 3(7) of ERISA,

29 U.S.C. § 1002(7), in the Life Insurance Plan.

17.    At all relevant times, the Life Insurance Plan is and has been an "employee welfare benefit plan" within the meaning of Section 3(1) of ERISA, 29 U.S.C. § 1002(1).

18.    At all relevant times, Unum is and has been the claims administrator of the Life Insurance Plan within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

19.    Life insurance coverage and life insurance waiver of premium benefits under the Life Insurance Plan have been insured by Unum.

20.    At all relevant times, Unum has been a fiduciary under the Life Insurance Plan within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

21.    The Life Insurance Plan defines "Disability" or "Disabled" as follows:

You are disabled when Unum determines that:

-    during the elimination period, you are not working in any occupation due to your injury or sickness; and

-    after the elimination period, due to the same injury or sickness, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by training, education, or experience.

22.    The Life Insurance Plan Defines "Gainful Occupation" as follows:

An occupation that is or can be expected to provide you with an income within 12 months of your return to work, that exceeds:

-    80% of your indexed monthly earnings, if you are working; or

-    60% of your indexed monthly earnings, if you are not working.

## STANDARD OF REVIEW

23.    Neither the LTD Plan nor the Life Insurance Plan (together, "the Plans") contain language granting Unum discretionary authority to determine eligibility for benefits or to interpret the terms of the Plans.

24.    During the claims and administrative review processes, Unum failed to comply with the Department of Labor's claims procedure regulations, and its failure to comply was neither inadvertent nor harmless.

25.    Upon information and belief, Unum has not adopted claim procedures in accordance with the Department of Labor regulations.

26.    For these reasons, this case is subject to a *de novo* review.

## MR. GRAZIANO'S BACKGROUND AND DEGENERATIVE SPINAL AND SHOULDER CONDITIONS

27.    Mr. Graziano is a highly accomplished, 55-year-old man who had a long and successful career at Swiss Re as a Senior Production Underwriter.

28.    Mr. Graziano was a dedicated employee of Swiss Re, an employer he dutifully served for over 14 years, from 2004 to 2018.

29.    Unfortunately, Graziano's career was cut short on October 16, 2018, when he became unable to continue performing the duties of his occupation due to his worsening spinal and shoulder conditions and the pain and fatigue related to those conditions.

30.    Mr. Graziano began experiencing back pain in 2010 that over time became worse and would eventually interfere with his sitting, standing, and sleeping.

31.    In 2012, Graziano first received treatment for his back pain, including receiving a cortisone injection that provided some temporary relief.

32.    From 2012 to 2015, Graziano noticed a limited range of motion in his back and shoulders.  Mr. Graziano continued to seek treatment for his pain, including additional cortisone shots and physical therapy.

33.    In 2012, Graziano had surgery on his right shoulder to repair a biceps tendon.

34.    In 2014, David J. Perna, M.D. ordered an MRI and an x-ray of Graziano's spine.

Those tests revealed a fractured vertebrae and various disc herniations and bulges.

35.    In 2014, Graziano was forced to stop coaching and practicing baseball with his sons due to his increasing back pain.

36.    In early 2017, Graziano's pain and limitations continued to increase, and he sought additional treatment.

37.    On January 3, 2017, Graziano treated with Dr. Jeffry R. Beer for right-sided lumbar pain.  Upon exam, Dr. Beer noted symmetrically reduced bilateral Achilles reflexes and that Graziano's lumbar range of motion was limited by pain.  Dr. Beer ordered right L2-3 and L3-4 injections and advised Graziano to follow up in two weeks.

38.    On January 18, 2017, Graziano underwent a therapeutic lumbar zygapophyseal joint procedure – the injection of medication directly into the joint – with Dr. Beer to treat lumbar and lower extremity pain.

39.    On September 25, 2017, Graziano treated with Dr. Mehta for back pain.  Graziano reported low back pain with radiation bilaterally described as sharp, stabbing, tender, shooting, and throbbing that was rated 7/10 at rest and 10/10 with activity.  Mr. Graziano noted that the pain increases with activity, sitting, sneezing, standing, and walking.  Dr. Mehta ordered an MRI of the lumbar spine.

40.    In late 2017, Graziano suffered from an incident that marked the beginning of the end of his ability to continue in his occupation.

41.    As he was going through a turnstile in the subway station under his office building on his way home, Graziano's bag – laden with a heavy laptop and papers – slipped from his shoulder and fell to the ground.  The sudden shift in weight caused him to sharply twist his lower back.

42.     The pain brought him to his knees.  Mr. Graziano was immobilized and remained on the ground for over half an hour.  Passing commuters asked if he needed help.  Ultimately, he was able to gingerly make his way home from Manhattan to West Islip.  Along the way, he was forced to crawl at times due to the intense pain.

43.     Mr. Graziano stayed at home for the rest of the week, and he began to work from home frequently.

44.     Mr. Graziano's inability to reliably perform the duties of his work affected his ability to perform his occupation.

45.     Mr. Graziano's decreasing performance resulted in decreasing compensation.  For example, Mr. Graziano's annual bonuses decreased from $60,000 in 2014 to no earned bonus in 2017 or 2018.

46.     And, in early September 2018, Graziano's team leader recommended that Graziano adhere to the same schedule as other members of the team – four days in the office and one at home.  Mr. Graziano told the team leader he was not sure he would be able to comply because he was having increasing trouble reliably getting to the office, and he was having increasing trouble sitting and standing for extended periods of time.

47.     Then, on September 25, 2018, Graziano received a mid-year review summary from Mike Goodson, Vice President, Swiss Re.  Mr. Goodson noted that Graziano's year-to-date productivity included 20 submissions, 2 quotes, no new business, and 4 lost accounts.  Mr. Goodson stated that Graziano had to have clear emphasis on marketing efforts, working new submissions, and "finding the new wins."  Mr. Goodson stated that such productivity would only be enhanced with Graziano's presence and ability to work in the office.

48.     Mr. Goodson noted that Graziano had two doctor appointments scheduled due to

continued discomfort in his back, and Mr. Goodson detailed his expectations for time Graziano should spend in the office going forward.  Mr. Goodson noted that Human Resources was copied on the email and would be further consulted if Graziano could not maintain the schedule that was established going forward.

49.    At the end of September 2018, Graziano traveled to Chicago for a three-day seminar with clients, causing him extreme pain and wear and tear on his already fragile back, trunk, shoulders, and arms.

50.    Due to back pain, in October 2018, Graziano had to forgo attendance at a major event at a Manhattan restaurant that he had organized for over 35 clients and department co-workers.

51.    On Tuesday, October 16, 2018 Graziano treated with Dr. Jeffry R. Beer.  Dr. Beer recommended that Graziano remain out of work until further notice, stating that Graziano's "symptoms (lumbar pain and limited lumbar ROM along with an inability to perform prolonged walking, standing and sitting)" rendered him "unable to physically perform his normal duties as Vice President/Senior Production Underwriter at Swiss Re."

**Unum Approved Graziano's Short Term Disability Claim**

52.    Mr. Graziano applied for Short Term Disability ("STD") benefits from Unum for the period beginning October 16, 2018.

53.    Unum considered, reviewed, and approved Graziano's STD claim.

54.    Mr. Graziano received STD benefits for the maximum benefit period of October 23, 2018 (after a 7-day waiting period following disability) through April 15, 2019.

**Unum Approved Graziano's Claims**

55.    Mr. Graziano also filed a claim for Long Term Disability ("LTD") benefits and a claim for life insurance waiver of premium benefits, alleging he became disabled on October 16, 2018 (together, the "Claims").

56.    On March 15, 2019, Unum's vocational representative, Ms. Katharine Rolph, gave Unum her opinion that Graziano's occupation was as follows:

> Sedentary Work. - Mostly sitting, may involve standing or walking for brief periods of time, lifting, carrying, pushing, pulling up to 10 pounds of force occasionally, frequent reaching primarily at desk level, handling, fingering, constant keyboard use.  The duties of this occupation would allow for changes in position for brief periods of time throughout the day.  The Bureau of Labor Statistics Occupational Outlook Handbook outlines that Property and Casualty Underwriters may travel to assess properties in person.  Therefore, it is reasonable that travel would be required.

57.    On March 20, 2019, Unum approved Graziano's claim for LTD benefits.

58.    Unum began paying Graziano LTD benefits as of April 16, 2019 (following the LTD Plan's 180-day unpaid waiting period).

59.    Unum's March 20, 2019, letter told Graziano that it "approved your benefits because you are unable to perform the material and substantial duties of your regular occupation as defined in the policy."

60.    On March 28, 2019, Unum approved Graziano's claim for life insurance waiver of premium benefits.

61.    Unum's approval of Graziano's claim for life insurance waiver of premium benefits means that Unum decided that Graziano was unable to perform the duties of any gainful occupation for which he was reasonably fitted by training, education, or experience.

62.    Over the course of the remainder of 2019, Graziano continued to seek appropriate

treatment for his conditions, and he continued to provide information as requested from time to time by Unum.

63.     Unfortunately, over the course of the remainder of 2019 and to the present day, Graziano's conditions have not improved.

## Unum Terminated Graziano's Long Term Disability Benefits

64.     Unum terminated Graziano's LTD and life insurance waiver of premium benefits effective January 2, 2020.

65.     Unum's benefit termination letter states,

[W]e determined the material and substantial duties of your occupation require the following activities:

-   Mostly sitting, which may involve standing or walking for brief periods of time;

-   Lifting, carrying, pushing, pulling up to 10 pounds of force occasionally; and

-   Frequent reaching primarily at desk level, handling, fingering and keyboard use.

-   Travel is also required.

66.     Unum erroneously terminated Graziano's benefits based on the unreliable, unsupported, and incomplete opinions of Suzanne Sergile, M.D., Occupational Medicine, and Wendy Weinstein, M.D., Internal Medicine.

67.     Unum's reliance on these reports was unreasonable.

The Paper Review Report of Dr. Sergile

68.     Dr. Suzanne Sergile, M.D., conducted a paper review of Graziano's file (the "Sergile Report") and concluded that her "lack of findings is not supportive of the opinion that the claimant is precluded from full-time work with the outlined occupational demands."

69.    Dr. Sergile did not assess whether Graziano had any work restrictions/limitations.

70.    Unum relied on the Sergile Report.

71.    Unum's reliance on the non-examining report of Dr. Sergile was unreasonable.

72.    Dr. Sergile's non-examining report is unreliable because:

a.    Dr. Sergile's opinion was infected by conflict and bias;

b.    Dr. Sergile's conclusions lack foundation and are conclusory;

c.    Dr. Sergile failed to consider the degenerative nature of Graziano's condition and the lack of significant improvement;

d.    Dr. Sergile lacked appropriate qualifications to comment on Graziano's spinal conditions (Dr. Sergile is not an orthopedist, spinal surgeon, or neurologist);

e.    Dr. Sergile never examined Graziano in-person, which is particularly relevant, given the complexity of Graziano's conditions;

f.    Dr. Sergile failed to consider all relevant information, including Graziano's relevant own occupational demands; and

g.    Dr. Sergile's conclusions were inconsistent with the weight of the evidence.

The Paper Review Report of Dr. Weinstein

73.    Dr. Wendy Weinstein, M.D., conducted a paper review of Graziano's file (the "Weinstein Report") and concluded:

> The medical information does not support impairment from performing full-time work with the following occupational demands: mostly sitting, may involve standing or walking for brief periods of time; lifting, carrying, pushing, pulling up to 10 pounds of force occasionally; frequent reaching primarily at desk level, handling, fingering and keyboard use; travel is also required. The travel can occur via automobile and/or air; however, the frequency cannot be determined as it is based on business need.

74.    Dr. Weinstein did not assess whether Graziano had any work restrictions/limitations.

75.    Unum relied on the Weinstein Report.

11

76. Unum's reliance on the non-examining report of Dr. Weinstein was unreasonable.

77. Dr. Weinstein's non-examining report is unreliable because:

    a. Dr. Weinstein's opinion was infected by conflict and bias;

    b. Dr. Weinstein's conclusions lack foundation and are conclusory;

    c. Dr. Weinstein failed to consider the degenerative nature of Graziano's condition and the lack of significant improvement;

    d. Dr. Weinstein lacked appropriate qualifications to comment on Graziano's spinal conditions (Dr. Weinstein is not an orthopedist, spinal surgeon, or neurologist);

    e. Dr. Weinstein never examined Graziano in-person, which is particularly relevant, given the complexity of Graziano's conditions;

    f. Dr. Weinstein failed to acknowledge that narcotic pain medications were neither effective nor appropriate for long-term treatment of Graziano;

    g. Dr. Weinstein omitted key MRI findings;

    h. Dr. Weinstein mischaracterized Graziano's daily activities;

    i. Dr. Weinstein failed to consider Graziano's obesity; and

    j. Dr. Weinstein's conclusions were inconsistent with the weight of the evidence.

**Graziano Filed an Administrative Appeal**

78. Mr. Graziano filed an administrative appeal of Unum's benefit termination.

79. On appeal, Graziano submitted evidence demonstrating he could no longer perform the following duties: frequent travel; prolonged sitting, standing, or walking; frequent fine or gross motor movement using bilateral upper extremities; the ability to maintain a set work schedule and meet deadlines; and the ability to sustain attention and concentration.

80. Mr. Graziano also argued that Unum's decision was incorrect and unsupported

because Unum relied on the unreliable opinion of paper reviewers who: (a) never examined Graziano in person; (b) are unqualified to opine on Graziano's condition; (c) issued opinions which were contrary to all evidence; (d) and impermissibly cherry-picked and mischaracterized evidence in the claim file.

81.     With his appeal, Graziano submitted substantial new evidence further demonstrating that he did not experience significant improvement with ongoing treatment; his conditions continued to render him disabled.  Mr. Graziano's new evidence included:

   a.   An extensive, two-day-long Functional Capacity Evaluation performed at BEST Physical Therapy on January 28, 2020 and January 29, 2020, which objectively confirmed (without limitation): (1) further deterioration of Graziano's residual functional capacity following the prior FCE performed in 2018; (2) deterioration of physical capacity for activity over the two days of testing; (3) decreased hand fine motor, gross motor, and dexterity skills, "making any computer work very difficult to sustain"; (4) decreased walking ability, limited to six minutes at a below-average pace; (5) inability to sit, stand or maintain static positions for prolonged periods; (6) inability to tolerate an 8-hour workday at the sedentary physical demand level; and (7) the need for frequent rest breaks due to increased symptoms, poor stamina, and decreased musculoskeletal endurance.

   b.   Residual Functional Capacity Questionnaire, dated May 20, 2020, from Dr. Jeffry R. Beer which detailed: (1) Graziano's severe symptoms of pain, fatigue, generalized weakness, headaches, medication side effects, and cognitive deficits; (2) limitations in sitting, standing, walking, stair climbing, lifting, carrying, and other activity that precluded the performance of work activity at sedentary levels;

and (3) Graziano's symptoms interfered with his ability to concentrate, focus, and complete tasks requiring executive skills and cognitive functioning.

c. A medical statement from Dr. Jeffry R. Beer, dated September 16, 2020, which stated: (1) Unum's non-examining paper reviewer, Scott B. Norris, M.D., M.P.H., was not qualified to assess Graziano's conditions or functional limitations; (2) Dr. Norris erroneously interpreted the objective and diagnostic findings; (3) Graziano's condition had failed conservative treatment and his prognosis was poor; (4) Graziano's examination results included numerous positive objective findings consistent with the functional limitations outlined in the Functional Capacity Report of January 2020; (4) Graziano's activity was limited to less than sedentary levels; and (5) Graziano required frequent breaks and position changes with activity, causing him to be frequently off-task, limiting his ability to meet deadlines, and greatly reducing the quality of his work.

d. A medical statement from Dr. Jeffry Beer, dated October 29, 2020, which stated: (1) Unum's non-examining paper reviewer, Dr. Norris, failed to provide any restrictions or limitations related to the diagnosed spinal conditions; (2) Graziano's capacity for activity was limited to less than sedentary levels; (3) Graziano required frequent breaks and position changes which would cause him to be off at least 20% of the time during a normal workday; (4) the results of the FCE were consistent with the objective findings and diagnostic testing results contained in the treatment record; (5) Dr. Norris erroneously interpreted the absence of heavy narcotic pain medication prescriptions to mean that Graziano's pain was not severe nor his conditions functionally limiting; (6) Dr. Norris

erroneously cited Graziano's lack of physical therapy during a worldwide
COVID-19 pandemic to mean that Graziano's condition and symptoms were not
severe; and (7) Graziano is totally disabled.

e.  A detailed Vocational Assessment, dated May 5, 2020, from Amy Leopold, MS,
CRC, which indicated: (1) Graziano's occupation required frequent client site
visits, in-office work, and the ability to work under pressure, maintain
concentration, multitask, and be detail-oriented; (2) the travel demands of
Graziano's occupation elevated it to the light exertional level and regularly
required him to lift in excess of ten pounds; (3) any work for which Graziano is
qualified by training, education, and experience would require unrestricted use of
his bilateral hands; (4) Graziano's occupation required extended time sitting,
standing, walking, and/or using a computer; (5) the necessary absences from work
each month preclude competitive gainful activity; (6) Graziano has a less than
sedentary work capacity from both a physical and cognitive standpoint; and (7)
Graziano is totally disabled.

f.  Vocational Assessment Addendum, dated August 20, 2020, from Amy Leopold,
MS, CRC, which stated: (1) Graziano's occupation required frequent travel to
meet potential and existing clients; (2) the travel requirement of Graziano's
occupation elevated his occupation to the light physical demand level; (3)
Graziano's occupation required him to increase productivity and performance
growth by signing new business; (4) Graziano was unable to maintain the travel
and full-time in-office schedule necessary to meet the productivity and
performance growth requirements of his occupation; (5) Graziano's occupational

base was eroded by: (a) constant and severe fatigue; (b) severe pain; (c) functional limitations in sitting, standing, and walking; (d) an inability to reliably access "strong, above-average cognitive functioning skills, focus, multi-tasking, and executive functioning"; (e) an inability to reliably commute or meet the travel demands of his position; and (f) an inability to tolerate an 8-hour day.

g. Updated MRIs of the lumbar spine and left hip, which demonstrated significant clinical abnormalities;

h. Updated treatment records from Graziano's providers, which document ongoing symptoms, treatment, and clinical abnormalities;

i. Physical therapy treatment records from Generations Physical Therapy;

j. Statements from witnesses having personal knowledge; and

k. Testimonial statement from Graziano in affidavit form.

**Unum's Review of Graziano's Appeal**

Unum's Medical Review

82.     During Unum's review of Graziano's appeal, Unum obtained a report from a third non-examining paper review, Scott B. Norris, M.D., M.P.H., (the "Norris Report"), who concluded that Graziano could perform full-time sedentary work.

83.     Mr. Graziano subsequently submitted substantial new evidence in support of his appeal on September 25, 2020.

84.     Dr. Norris completed an addendum report on October 12, 2020, concluding that Graziano could perform full-time sedentary work.

85.     Mr. Graziano submitted additional new evidence in support of his appeal on November 2, 2020.

86.     Unum failed to refer the new evidence to Dr. Norris or any other medical professional for review.

87.     Unum issued a final determination regarding Graziano's appeal on November 10, 2020.

88.     In evaluating Graziano's appeal, Unum relied on the Norris report.

89.     Unum's reliance on the non-examining report of Dr. Norris was unreasonable.

90.     Dr. Norris' non-examining report is unreliable because:

    a.   Dr. Norris did not review all the medical documentation submitted to Unum in support of Graziano's appeal;

    b.   Dr. Norris, a practitioner board-certified in family/occupational/aerospace medicine, lacked appropriate qualifications to comment on Graziano's conditions.  Dr. Norris is not an orthopedist, spinal surgeon, or neurologist;

    c.   Dr. Norris incorrectly reported and omitted key findings from diagnostic testing results of the lumbar spine;

    d.   Dr. Norris did not consider the effects of pain, weakness, limited mobility, or decreased musculoskeletal tolerance on Graziano's ability to sustain exertional activity;

    e.   Dr. Norris did not consider the effect of obesity on Graziano's functional capacity, nor how it further eroded the occupational base;

    f.   Dr. Norris erroneously interpreted Graziano's lack of surgery and his conservative medication regimen as evidence of a non-severe condition;

    g.   Dr. Norris failed to consider the degenerative nature of Graziano's condition and lack of improvement with ongoing treatment;

h.  Dr. Norris failed to comment on or address any restrictions or limitations related to the diagnosed lumbar spinal conditions;

i.  Dr. Norris wrongly stated that Graziano's condition was stable (testing results show otherwise), and then equated stability with a lack of severity;

j.  Dr. Norris unreasonably argued that Graziano's lack of physical therapy during a worldwide COVID-19 pandemic was evidence of a non-severe condition;

k.  Dr. Norris failed to consider the deterioration of Graziano's capacity for activity with increased exertional demands;

l.  Dr. Norris failed to consider Graziano's need for breaks, position changes, and absences from work;

m.  Dr. Norris' opinion was infected by conflict and bias;

n.  Dr. Norris' conclusions lack foundation and are conclusory;

o.  Dr. Norris never examined Graziano in person, which is particularly relevant, given the complexity and interconnected nature of Graziano's conditions;

p.  Dr. Norris failed to consider all relevant information, including Graziano's relevant own occupational demands; and

q.  Dr. Norris's conclusions are inconsistent with the weight of evidence.

<u>The Response of Graziano's Treating Spinal Specialist, Dr. Beer, to the Norris Report</u>

91.  Mr. Graziano's treating provider, Dr. Beer, provided statements regarding the unreliability of the Norris report, and his disagreement with Dr. Norris' conclusions.

92.  First, Dr. Beer criticized Dr. Norris's qualifications (e.g., Dr. Norris is neither a spinal surgeon nor a neurologist) and Dr. Norris's lack of clinical familiarity with Graziano.

18

93.     Second, Dr. Beer confirmed Dr. Norris was incorrect in concluding the record

lacked objective findings supportive of restrictions and limitations preclusive of sedentary work:

> The severity of Michael's condition as evidenced by objective
> findings and diagnostic testing results is consistent with the
> functional limitations outlined in the January 28, 2020, in [sic]
> January 29, 2020, FCE report.

94.     According to Dr. Beer and the Functional Capacity Evaluation report, Graziano's

residual functional capacity does not allow for performance of even sedentary work levels on a

"ongoing and consistent basis."

> While Michael may be able to occasionally perform some sedentary tasks, he
> cannot do so on an ongoing and consistent basis. He requires frequent breaks
> with any activity and must often changes.

95.     Third, Dr. Beer disagreed with Dr. Norris' erroneous assessment that conservative

treatment is indicative of a non-severe impairment and evidence of minimal functional limitations.

Per Dr. Beer, "Just because Michael does not take pain medications does not mean that his

condition is not severe[ly] disabling. Many patients choose to forgo heavy narcotics and bear

extreme pain due to the negative potential effects of medications."

96.     Fourth, Dr. Beer addressed an area of limitation not considered by Dr. Norris,

stating that Graziano's "severe pain and need for precomputed changes would cause them to be

frequently off task, limit his ability to meet deadlines, and greatly reduce the quality of his work."

<u>Unum's Vocational Assessment</u>

97.     Mr. Graziano submitted a vocational assessment report from Amy Leopold, MS,

CRC, dated May 5, 2020, in connection with his appeal.

98.     Unum obtained a new vocational assessment report from Kelly B. Marsiano, M.

19

Ed., CRC, dated July 28, 2020.

99.    Mr. Graziano submitted additional vocational evidence in support of his appeal on September 25, 2020, in the form of an addendum from Amy Leopold, MS, CRC, dated August 20, 2020.

100.    Unum subsequently obtained a vocational assessment report from Shannon O' Kelley, dated October 12, 2020.

101.    Unum relied on the vocational assessment reports of Kelly Marsiano and Shannon O' Kelley.

102.    Unum's reliance on Kelly Marsiano's and Shannon O' Kelley's reports was unreasonable.

103.    Kelly Marsiano's and Shannon O'Kelley's vocational assessment reports are unreliable because:

a.    Ms. Marsiano and Ms. O' Kelley did not consider the full demands of Graziano's occupation;

b.    Ms. Marsiano and Ms. O' Kelley failed to consider the extensive requirements of Graziano's occupation;

c.    Ms. Marsiano and Ms. O' Kelley failed to consider the necessity for frequent standing and walking for the performance of Graziano's occupation;

d.    Ms. Marsiano and Ms. O' Kelley failed to consider how an inability to travel would impact Graziano's job performance;

e.    Ms. Marsiano and Ms. O' Kelley failed to consider the effect that Graziano's inability to reliably commute would have on his work performance;

    f.   Ms. Marsiano and Ms. O' Kelley erroneously categorized Graziano's occupation as sedentary, and in doing so failed to accurately describe the demands of Graziano's occupation at the time of disability; and

    g.   Ms. Marsiano and Ms. O' Kelley failed to consider the effect of time off-task or absences from work on Graziano's ability to perform his own occupation.

**Unum Upheld Its Benefit Termination on Appeal**

104.    On November 10, 2020, Unum informed Graziano of its decision to uphold its benefit termination.

105.    In doing so, Unum unreasonably relied on the Norris report, which is described above.

106.    In evaluating Graziano's appeal, Unum failed to consult with a physician appropriately qualified to comment on Graziano's diagnosed spinal conditions.

107.    In evaluating Graziano's appeal, Unum unreasonably relied on the opinions of a biased, non-examination physician whose conclusions were incorrect, incomplete, unreliable, and conclusory.

108.    In evaluating Graziano's appeal, Unum denied Graziano a full and fair review by failing to provide Dr. Norris with the Generation Physical Therapy records dated October 28, 2020, and medical statement of Dr. Beer, dated October 29, 2020.

109.    Mr. Graziano exhausted all administrative remedies at the Plans.

## UNUM'S CONFLICT OF INTEREST

110.    At all relevant times, Unum has been operating under an inherent and structural conflict of interest because, on the one hand, Unum is liable for benefit payments due to Graziano and, on the other hand, each payment issued depletes Unum's assets.

111.     Unum's determination was influenced by its conflict of interest.

112.     Unum's conflict of interest extended to and infected its non-examining paper reviewers, Drs. Weinstein, Sergile, and Norris.

**Unum's Cozy Relationship with Drs. Weinstein, Sergile, and Norris**

113.     Drs. Weinstein, Sergile, and Norris are not impartial physicians.

114.     Upon information and belief, Dr. Weinstein is an in-house medical consultant for Unum.

115.     Upon information and belief, Dr. Sergile is an independent contractor hired and/or retained directly by Unum, either directly or through a third-party vendor.

116.     Upon information and belief, Dr. Norris is an independent contractor hired and/or retained directly by Unum, either directly or through a third-party vendor.

117.     Upon information and belief, Drs. Weinstein, Sergile, and Norris have conducted reviews in connection with numerous other individuals insured by Unum.

118.     Unum knows, or has reason to know, that its in-house medical consultants and the medical consultants hired and/or retained to complete file reviews serve only the interests of insurance companies and never individual claimants.

119.     Upon information and belief, Unum pays substantial sums of money to its medical consultants, whether in-house or independent contractors, to conduct reviews for Unum's insureds.

120.     Because the medical consultants derive substantial income from performing file reviews for Unum insureds, the medical consultants have an incentive to provide file reviews that Unum deems favorable in order to perform future file reviews for Unum.

121.     Unum has failed to take active steps to reduce potential bias and to promote accuracy of its benefit determinations.

## **COUNT I (LTD Plan)**

122.    Mr. Graziano repeats and re-alleges the allegation set forth in paragraphs 1 through 121 above.

123.    Unum had no legal basis for terminating Graziano's LTD benefits.

124.    Under the terms of the LTD Plan, Unum agreed to provide Graziano with certain disability insurance benefits under the LTD Plan, in accordance with the terms and conditions set forth therein.

125.    To date, Unum has failed and refused to pay Graziano the LTD benefits to which is he is rightfully entitled, from January 2, 2020 through the present date.

126.    Mr. Graziano has satisfied all conditions precedent under the LTD Plan and is thus eligible to receive benefits.

127.    Unum's determination that Graziano is not disabled within the meaning of the LTD Plan is contrary to the terms of the LTD Plan, contrary to the medical evidence, unreasonable, and an abuse of discretion.

128.    Unum has financial conflicts of interest with respect to handling, monitoring, and eventually denying Graziano's disability benefits.

129.    Unum was influenced by its financial conflict of interest, as both the administrator of the LTD Plan and the payor of benefits thereunder, when deciding to deny Graziano's disability benefits.

130.    The unlawful behavior of Unum is evidenced by the following:

    a.    Denying benefit payments to Graziano at a time when it knew that he was entitled to said benefits under the terms of the LTD Plan, in bad faith and contrary to the LTD Plan;

b.  Unreasonably withholding payments from Graziano knowing his claim for benefits was valid;

c.  Unreasonably failing to pay benefits without having any evidence, substantial or otherwise, supporting its decision to terminate benefits;

d.  Terminating benefits in the absence of medical improvement;

e.  Ignoring Graziano's treating providers' assessments of his medical conditions, and how they restrict and limit him from performing his own occupation, without any basis for doing so in violation of 29 C.F.R. § 2560.503-1(h)(2)(iv);

f.  Relying on non-examining medical consultants to deny a claim supported by the treating providers;

g.  Relying on non-examining medical consultants to deny a claim supported by diagnostic testing and objective medical evidence;

h.  Refusing to give appropriate consideration to the Functional Capacity Evaluation report, despite acknowledging the validity of the testing;

i.  "Cherry-picking" and selectively highlighting certain factors in medical or reviewing reports to cast a favorable light on its position, while ignoring the conclusions of Graziano's treating providers regarding the conditions for which they render treatment;

j.  Failing to consult with a healthcare professional who has appropriate training and experience to comment on Graziano's complex spinal conditions, in violation of 29 C.F.R. § 2560.503(h)(3);

k.  Completely disregarding Graziano's subjective complaints, his own assessment of his medical conditions, and how they restrict and limit him from performing

24

his own occupation, in violation of 29 C.F.R. §2560.503-1(h)(2)(iv);

l.  Engaging in a pattern of procedural irregularities to advance its own corporate interests in terminating benefits, to the detriment of LTD Plan participants;

m.  Failing to provide a "full and fair review" as Unum was obligated to do pursuant to 29 C.F.R. §2560.503-1(h)(4);

n.  Failing to provide Graziano with an adequate description of any additional material or information necessary to perfect his claim in violation of 29 C.F.R. §2560.503-1(g)(1)(iii);

o.  Failing to maintain and utilize "reasonable claims procedures" as it was obligated to do pursuant to 29 CFR § 2560.503-1(b), in violation of ERISA;

p.  Failing to follow its own internal claims administration policies and procedures;

q.  Consistently acting in its own corporate interests instead of those of the LTD Plan and its participants; and

r.  Unum's unlawful behavior and violations of ERISA's procedural regulations were purposeful and harmful to Graziano.

131.   Unum breached its fiduciary duty by: failing to fairly review and reasonably interpret the Functional Capacity Evaluation report and the reports prepared by Graziano's treating providers; failing to consider other material relevant to his medical condition; and terminating benefits in the absence of medical improvement.  Instead, Unum created artificial reasons for terminating Graziano's disability benefits.  Unum selectively highlighted certain factors in medical reports in order to cast a favorable light on its position while ignoring the conclusions of Graziano's treating providers and the Functional Capacity Evaluation about the conditions for which they rendered treatment/evaluation.

132.    Unum breached its fiduciary duty to Graziano by placing its financial interests in reducing its expenses and increasing its profitability above Graziano's interests under the LTD Plan to receive disability benefits.

133.    A "higher than marketplace" quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), applies to evaluating the actions of Unum in this case.

134.    Unum was required to discharge its duties "solely in the interests of the participants and beneficiaries of the plan."

135.    Unum violated the higher-than-marketplace standards that ERISA imposes on insurers.

136.    Mr. Graziano has been forced to bring the instant action as a direct result of Unum's unlawful benefit denial and violations of the LTD Plan and ERISA.

137.    Under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), Graziano is entitled to recover disability benefits under the LTD Plan that have not been paid to date, with interest, and those that will become due in the future.

## COUNT II (Life Insurance Plan)

138.    Mr. Graziano repeats and re-alleges the allegation set forth in paragraphs 1 through 137 above.

139.    Unum had no legal basis for terminating Graziano's life insurance waiver of premium benefits.

140.    Under the terms of the Life Insurance Plan, Unum agreed to provide Graziano with certain waiver of premium benefits under the Life Insurance Plan, in accordance with the terms and conditions set forth therein.

141.    To date, Unum has failed and refused to waive the life insurance premiums, a

benefit to which is he is rightfully entitled, from January 2, 2020, through the present date.

142.    Mr. Graziano has satisfied all conditions precedent under the Life Insurance Plan and is thus eligible to receive benefits.

143.    Unum's determination that Graziano is not disabled within the meaning of the Life Insurance Plan is contrary to the terms of the plan, contrary to the medical evidence, unreasonable, and an abuse of discretion.

144.    Mr. Graziano has been forced to bring the instant action as a direct result of Unum's unlawful benefit denial and violations of the Life Insurance Plan and ERISA.

145.    Under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), Graziano is entitled to recover waiver of premium benefits under the Life Insurance Plan that have not been paid to date, with interest, and those that will become due in the future.

## COUNT III (Attorney Fees and Costs)

146.    Mr. Graziano repeats and re-alleges the allegations set forth in paragraphs 1 through 145 above.

147.    By reason of LTD Plan and Life Insurance Plan's failure to pay Graziano LTD and life insurance waiver of premium benefits due under the terms of the Plans, Graziano has been forced to retain attorneys to recover such benefits, for which he has and will continue to incur attorneys' fees.  Mr. Graziano is entitled to recover reasonable attorneys' fees and the costs of this action, pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).

**WHEREFORE**, Mr. Graziano demands judgment against Unum:

A.    For the amount of all long term disability benefits due under the terms of the LTD Plan that have not been paid, together with interest thereon;

B.    Clarifying and declaring that the LTD Plan is obligated to pay Graziano long term

disability benefits in the future as required by the LTD Plan;

       C.      For the amount of all life insurance waiver of premium benefits due under the terms of the Life Insurance Plan that have not been paid, together with interest thereon;

       D.      Clarifying and declaring that the Life Insurance Plan is obligated to waive Graziano's premiums due in the future as required by the Life Insurance Plan;

       E.      For the costs of this action and Graziano's attorney's fees, pursuant to Section 502(g) of ERISA, 29 U.S.C. § 1132(g)(1); and

       F.      For such other and further relief as may be deemed just and proper by the Court.

Dated: New York, New York
       March 30, 2021

           By:    /s/ Scott M. Riemer
                  Scott M. Riemer (SR 5005)
                  Matthew Maddox (MM 8359)
                  RIEMER HESS LLC
                  Attorneys for Mr. Graziano
                  275 Madison Avenue, 26th Floor
                  New York, New York 10016
                  (212) 297-0700
                  sriemer@riemerhess.com
                  mmaddox@riemerhess.com