UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X
                               :

MICHAEL J. GRAZIANO,           :

          *Plaintiff*       :          21-cv-2708 (PAC)

                               :

        v.                  :          **OPINION & ORDER**

                               :

FIRST UNUM LIFE INSURANCE  :
COMPANY,                      :

         *Defendant*     :
-----------------------------------------------------------------X

On March 30, 2021, plaintiff Michael Graziano ("Graziano") filed this action alleging that defendant First Unum Life Insurance Company ("Unum") violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, by improperly terminating his long-term disability plan ("LTD Plan") and life insurance premium waiver ("LIP Waiver") benefits. *See* Compl., ECF No. 1. On March 4, 2022, the parties agreed to resolve their dispute with a bench trial on a stipulated administrative paper record pursuant to Federal Rule of Civil Procedure 52. *See* Memo Endorsement, ECF No. 33;[1] *see also Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003). The matter has now been fully briefed. For the reasons stated below, judgment is entered in favor of Graziano through November 10, 2020, and remanded to Unum for benefits determination from November 11, 2020, onwards.

---

[1] The case was initially assigned to the Honorable Allison Nathan, before being reassigned to this Court on April 6, 2022. *See* Notice of Case Reassignment.

## Background[2]

### I.    Employment at Swiss Re and Disability Plan

Graziano began working as a Senior Property Underwriter for Swiss Re Group ("Swiss Re") in 2004. *See* LTD at 487.[3]  His job involved supervising junior underwriters, maintaining and developing core insurance business, using pricing and aggregate capacity costing tools, and reviewing and issuing manuscripts and company policy forms. *Id.*  Most of these tasks were performed at his desk, but he also "spent a significant amount of time traveling to client meetings and presentations with his laptop and business materials." *Id.* at 1389.

As part of his employment, Graziano was provided with the LTD Plan issued by Unum. Under the LTD Plan,

> You are disabled when Unum determines that:
> - you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and
> - you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.
>
> After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

---

[2] The following findings of facts are based on the parties' stipulated record.  *See* Fed. R. Civ. Pro. 52(a)(1) ("In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately.").  "To the extent that any finding of fact reflects a legal conclusion, it shall to that extent be deemed a conclusion of law, and vice versa." *Barbu v. Life Ins. Co. of N. Am.*, 35 F. Supp. 3d 274, 280 (E.D.N.Y. 2014).

[3] The stipulated record is referenced in accordance with the April 26, 2022, affirmation of Matthew Maddox.  See Maddox Aff., ECF No. 36.  The Court adopts the following Bates numbering scheme:  Maddox Aff. Ex. 2: "LTD 1–1873"; Maddox Aff. Ex. 3: "LIP Waiver 1–346"; Maddox Aff. Ex. 4: "LTD Policy 1–41"; Maddox Aff. Ex. 5: "LIP Waiver Policy 1–64."

LTD Policy at 16.  Under the LTD Plan, "material and substantial duties" are those "normally required for the performance of your regular occupation" and "cannot be reasonably omitted or modified." *Id.* at 31.  "Regular occupation" means "the occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location." *Id.* at 33.

Graziano also was provided with the LIP Waiver Plan.  Under the LIP Waiver,

> You are disabled when Unum determines that:
> - during the elimination[4] period, you are not working in any occupation due to your injury or sickness; and
> - after the elimination period, due to the same injury or sickness, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by training, education or experience.

LIP Waiver at 34.

## II.   **Initial Back Pain**

Graziano is fifty-eight years old.  *See* LTD at 91.  He first began suffering from lower right back pain in 2010.  *Id.* at 1281.  Graziano's primary care physician, Dr. Sidney Stein,[5] referred Graziano for cortisone injections to treat his back pain.  *Id.*  Graziano continued to receive injections and nerve blocks from 2012 through 2014.  *Id.* at 1282–83.  By 2015, when these treatments did not work and as the pain worsened, Graziano began seeing pain management specialist Dr. Jeffrey Beer[6] at Long Island Spine Rehabilitation Medicine.  *Id.* at 1284–85.  Dr.

---

[4] The elimination period is 6 months.  *See* LIP Waiver Policy at 33–34.

[5] As of May 2020, Dr. Stein was still Graziano's primary care physician.  *See* LTD at 1281.

[6] Dr. Beer is board certified in Physical Medicine and Rehabilitation and is a pain management specialist.

Beer gave Graziano another injection in 2015. *Id.* This time the injection provided temporary relief for approximately 3-6 months. *Id.*

In January 2017, Graziano saw Dr. Beer again after his back pain returned. *Id.* at 162. Dr. Beer observed that Graziano's bilateral Achilles reflexes were symmetrically reduced, and his lumbar range of motion was moderately pain limited. *Id.* Dr. Beer "personally interpreted" an MRI of Graziano's lumbar spine and observed a small left side protrusion at L2-3 without "significant central canal or nf stenosis." *Id.*[7] Dr. Beer administered a lumbar injection to treat Graziano's pain. *Id.* at 174.

Two months later, on March 3, 2017, Graziano saw Dr. Stein again about his chronic back pain and burning in his legs. *Id.* at 186. Graziano reported that the epidurals were not helping with the pain. *Id.* Graziano then saw Dr. Stein again on August 8, 2017. *Id.* at 197. This time, Graziano felt "good overall," had full range of motion in his lumbar spine, and no pain on straight leg raising or with hip rotation or abduction or adduction. *Id.* at 197–99.

### III.    **Shoulder Pain**

Graziano first experienced shoulder pain in 2012. *Id.* at 1283. By 2018, Graziano's shoulder pain increased, limiting his range of motion, giving him "dead arm" while sleeping and working on the computer, and distracting him at work. *Id.* at 1092. In December 2018, Dr. James Marzec, M.D.[8] noted Graziano had atrophy of his right deltoid muscle and ordered MRIs of both Graziano's

---

[7] "Central canal stenosis occurs when the central spinal canal is constricted with enlarged ligament and bony overgrowth causing compression of the spinal cord and cauda equina. Cauda equina (literally 'horse's tail') is a bundle of spinal nerves and spinal nerve rootlets at the base of the spinal column near the first lumbar vertebra." *Zoeller v. Berryhille*, No. 3:18-cv-19 (DFM), 2019 WL 2498388, at *2 n.6 (D. Conn. June 17, 2019) (internal citation omitted).

[8] Dr. Marzec is a board-certified surgeon specializing in Sports Medicine.

4

shoulders. *Id.* at 412. The MRIs revealed, *inter alia,* moderate to marked glenohumeral osteoarthritis in Graziano's right shoulder and moderate glenohumeral osteoarthritis in his left shoulder. *Id.* at 368–69.[9]

On January 14, 2019, Graziano saw Dr. Steven Rokito, M.D.[10] on a referral from Dr. Marzec regarding his shoulders. *Id.* Graziano reported pain and stiffness in both shoulders, and that his right shoulder was worse than the left. *Id.* Dr. Rokito interpreted x-rays that showed moderate to advanced osteoarthritis in his right shoulder with a large osteophyte projecting off the inferior aspect of the humeral head and moderate osteoarthritis changes in his left shoulder with an osteophyte projecting off the inferior aspect of the humeral head. *Id.* at 427–28. Dr. Rokito diagnosed Graziano with primary osteoarthritis in both shoulders and noted he was a potential future candidate for shoulder arthroplasty. *Id.* He recommended Graziano follow-up in six months; as of May 2020, however, Graziano had declined to follow-up on this diagnosis because he felt he was "too young for a shoulder replacement." *Id.* at 1092.

On February 18, 2019, Dr. Marzec prescribed physical therapy to treat Graziano's shoulders. *Id.* at 429. Graziano went to Generations Physical Therapy approximately one week later, on February 25, 2019. *Id.* at 594. Graziano continued physical therapy to treat his shoulders and back.

---

[9] "Osteoarthritis is a noninflammatory degenerative joint disease characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins, and changes in the synovial membrane. It is accompanied by pain and stiffness, particularly after prolonged activity. Glenohumeral is a term pertaining to the glenoid cavity and the humerus. The glenoid cavity is a depression in the lateral angle of the scapula for articulation with the humerus." *Wiebicke v. Astrue*, 10 Civ. 3371 (BSJ) (FM), 2018 WL 2861681, at *2, n.5 (S.D.N.Y. July 2, 2012) (cleaned up).

[10] Dr. Rokito is board-certified in orthopedic surgery and sports medicine.

## IV.    **Graziano's Lumbar Condition Deteriorates**

At "the end of 2017," Graziano "tweaked" his lower back passing through a turnstile at a subway station, after his heavy backpack slipped off his shoulder. *Id.* at 1285. Graziano remained on the ground, in pain, for 30 minutes, and finally made it home after several hours, "some of it crawling." *Id.*[11]

On October 6, 2017, Graziano had an MRI done of his lumbar spine, which showed diffuse degenerative disc disease with disc desiccation and osteophytes throughout the lumbar spine, minor stenosis at multiple levels, and disc bulging. *Id.* at 179–80. Graziano then saw Dr. Stein three weeks after the MRI, again regarding his back pain. *Id.* at 206. Dr. Stein noted that Graziano was seeing a pain management specialist and that the epidurals were not providing relief. *Id.* He also indicated that Graziano's MRI showed more findings on his left side, but that Graziano's pain was on his right. *Id.* Dr. Stein found Graziano had "pain with rotation and lateral flexion to the right." *Id.* at 207. He diagnosed Graziano with "[r]adiculopathy of lumbar region." *Id.* at 208.[12]

Graziano saw Dr. Beer once more for back pain on November 28, 2017. *Id.* at 163. Graziano's pain improved after the injections, but returned a few months later. Dr. Beer again observed symmetrically reduced bilateral Achilles reflexes and that Graziano's lumbar range of motion was moderately pain limited. *Id.* Dr. Beer administered additional spinal injections and blocks in December 2017, January 2018, and April 2018. *Id.* at 175–78.

---

[11] Graziano does not indicate when the subway fall happened nor is it referenced in Graziano's physician visits from October and November 2017.

[12] "Lumbar radiculopathy is a disease involving the lumbar spinal nerve root and is typically caused by a compression of the spinal nerve root." *McIntosh v. Berryhill*, 17cv5403, 2018 WL 4376417, at *2 n.6 (S.D.N.Y. July 16, 2018) (internal quotation marks omitted).

By late 2018, Graziano's back pain began negatively impacting his work quality as his production visits, client visits, and existing and new submissions all began to decrease. *Id.* at 1288. According to Graziano, he was unable to meet with clients and brokers or sit for the length of time required to input information into Swiss Re's computer system. *Id.* In September 2018, Graziano's team leader called a meeting to address Graziano's productivity issues, recommended that he come into Swiss Re New York City's office four days a week, and spend only one day a week at home "as most others in [Graziano's] position do." *Id.* at 1289. Graziano explained that he had trouble traveling, commuting, sitting, and standing for extended periods of time. *Id.* Swiss Re would not allow for any exceptions. *Id.*

At the end of September 2018, Graziano attended a three-day seminar in Chicago with clients. *Id.* The trip, however, "really tired [him] out and caused extreme pain with the air travel, hotel stay and day to evening meetings." *Id.* After returning from the Chicago trip, Graziano began going into Swiss Re's office 3 days a week. *Id.* at 1290. On Graziano's last day in the office, he had to "crawl on the subway floor before [he] could stand up." *Id.* at 1291.

On October 4, 2018, Graziano saw Dr. Beer, who noted his April 2018 injection provided no relief. Graziano remained in chronic pain, had difficulty getting into work, and had suffered an "exacerbation of lumbar pain in the summer." *Id.* at 160. Dr. Beer felt Graziano could not "perform his regular duties at work." *Id.* Four days later on October 8, Graziano saw Dr. Stein again and reiterated that his back was "limiting his work." *Id.* at 209. Dr. Stein observed that there was no tenderness on Graziano's lumbar spine, but that Graziano had "focal pain with rotation right [and] left and right lateral flexion." *Id.* at 211. Dr. Stein advised Graziano to "follow up with his pt and neurosurgeon . . . [and] try for imaging including the lower T spine." *Id.* at 212.

### V.   **Graziano Leaves Work and Applies for Benefits**

On October 11 and 12, 2018, Graziano underwent a two-day Functional Capacity Evaluation ("October 2018 FCE") at Best Physical Therapy Associates, conducted by Susan Greenberg, MS, PT.[13]  *Id.* at 234–62.  The October 2018 FCE listed Graziano's diagnoses as right low back pain; diffuse degenerative disc disease with disc desiccation and osteophytes throughout the lumbar spine; disc bulging at multiple levels; facet arthropathy; and left disc extrusion at L2-3 with mass effect on L-3 nerve root.  *Id.* at 233–34.  Graziano experienced moderate to severe low back pain which increased with sitting, walking, and being on the move.  *Id.* at 234.  The report characterized Graziano's occupation as a senior underwriter as light physical exertion (with medium components), according to Department of Labor categories.  *Id.* at 233–34.  Graziano could engage in light housekeeping (like tidying and dishes) for short periods of time; mop and vacuum with help but not lift heavy loads; dress himself but required assistance with his belt, shoes, and socks; do some food shopping but not carry heavy bags; drive short distances but not lift heavy loads; and perform computer tasks but with help and he needed to get up each hour to stretch.  *Id.* at 234–35.

Graziano's performance of the test's tasks were physically limited by cervical and spinal muscle stiffness and tightness that increased as time went on; decreased range of motion and strength of the trunk and shoulders/hips; below average pinch grip strength and hand coordination. *Id.* at 238.  Specifically, the October 2018 FCE found that Graziano's sitting tolerance was "poor

---

[13] "FCEs are tools used to attempt to define an individual's functional abilities or limitations in the context of safe, productive work tasks. The examination consists of a series of test activities to measure whether an individual has the ability to meet the required job demands." *Bressmer v. Fed. Express Corp.*, No. 99-9225, 2000 WL 637069, at *1 n.1 (2d Cir. 2000) (cleaned up).

and consistent throughout all of the FCE subtests and history/musculoskeletal assessments" and that he exhibited "increased spinal stiffness and increased low back pain significantly affecting his sitting tolerance." *Id.* at 240. Graziano was also "physically agitated in the sitting position and very frequently stood up to change positions." *Id.* Graziano scored a 66% on the Back Index (with 100% being the most impaired score), 38% on the Neck Index (with 100% being the most impaired score), 53% on the Disabilities of the Arm, Shoulder, and Hand (with 100% being the most impaired score), and 19/80 (with 0/80 being the most impaired) on the Lower Extremity Functional Scale. *Id.* at 246.

He reported pain initially as a "6/10 on the first day of testing, which increased to 8/10 and then to 7/0 on the second day of testing." *Id.* at 246. Graziano exhibited "poor core and scapula stabilization and postural deficits due to his trunk, shoulders, and lower extremity weakness, which result[ed] in a type of dysfunctional gait pattern . . . [h]is ambulation pace fell into the below average range for his age and gender based on a 6-minute timed walking test." *Id.* at 247. Overall, Graziano gave "maximum, consistent effort" and met all eleven check-point consistency tests embedded within the FCE, indicating he was not malingering. *Id.* at 236.

The report concluded that Graziano could not sit "frequently to perform job duties" nor "tolerate an 8-hour work day due to positional intolerances in sitting and standing (must change positions every 20 to 25 minutes and every 25 minutes, respectively), increased fatigue, deterioration of movements as tasks progress, and poor musculoskeletal endurance." *Id.* at 251–52. Graziano was thus "totally disabled" from his occupation and could not function even at the "sedentary physical demand level." *Id.* at 252.

Approximately one week later, on October 16, 2018, Graziano met with Dr. Beer and told Dr. Beer he "could not do [his] job any more and [that his] condition was only getting worse." *Id.* at

9

1291. Dr. Beer agreed and, in a "To Whom It May Concern" letter, opined that Graziano was "unable to physically perform his normal duties as Vice President/Senior Production Underwriter at Swiss Re" given his lumbar pain and inability to perform prolonged walking, standing, and sitting. *Id.* at 265. He recommended that Graziano be "absent from work until further notice." *Id.* Graziano was to remain under Dr. Beer's care "for the foreseeable future." *Id.*

Graziano applied for, and received, short-term disability benefits for 6 months, from October 2018 through April 2019. *Id.* at 1291–92; *see also* Def.'s Tr. Brief at 4 n.2, ECF No. 44. After his short-term disability ended, Swiss Re asked Graziano if he could return to work. *Id.* He told them he could not and was subsequently let go. *Id.*

## VI.   **LTD and LIP Waiver Benefits**

On February 27, 2019, Graziano applied for LTD and LIP Waiver benefits. *Id.* at 515. On March 15, 2019, Unum asked its vocational expert Katharine Rolph to review Graziano's claim. *Id.* at 458. Rolph classified Graziano's occupation as Property and Casualty Underwriter pursuant to the Bureau of Labor Statistics Occupation Outlook Handbook and opined that Graziano's occupation was sedentary and required mostly sitting; brief periods of standing or walking; lifting, carrying, pushing, pulling up to 10 pounds, and frequent reaching at desk level and constant keyboard use. [14] *Id.* She also noted his occupation would allow for changes in position for brief periods of time throughout the day and that travel would be required to assess properties in person. *Id.* She did not specify how long "brief periods" were. Unum further found that Graziano had

---

[14] The Revised Handbook for Analyzing Jobs defines "occasionally" as an activity or condition that exists 0-2.5 hours in an 8-hour workday; "frequently" as an activity or condition that exist from 2.5-5.5 hours in an 8-hour workday; and "constantly" as an activity or condition that exists more than 5.5 hours in an 8-hour workday. LTD  at 619.

"low back pain for which he has undergone conservative treatment" but that "[g]iven the demands noted by [Rolph] it is medically reasonable that [Graziano] would not have the sustained, predictable capacity to allow for activities as noted by [Rolph]." *Id.* The duration of Graziano's disability was "unclear at th[e] time given conservative treatment with unclear POC." *Id.*

Unum approved Graziano's application for LTD benefits on March 20, 2019. LTD at 466 ("LTD Approval Letter"). Graziano's date of disability was October 16, 2018, and his benefits began on April 16, 2019. *Id.* Unum also noted that Graziano was "in the process of completing 3 months of physical therapy" and requested updated medical information once he finished physical therapy in "order to determine when [Graziano would] regain the capacity to return to work." *Id.* at 467. One week later, on March 28, 2019, Unum approved Graziano's claim for LIP Waiver benefits, effective starting April 16, 2019. LIP Waiver at 223 ("LIP Waiver Approval Letter"). The LIP Waiver Approval Letter likewise placed Graziano's date of disability on October 16, 2018, and found that his elimination period would end on April 15, 2019. *Id.*

## VII.    Unum Continues to Review Graziano's Claim

Graziano attended physical therapy from February through May 2019, on referrals from Dr. Beer and Dr. Marzec. *Id.* at 557–90; *see also id.* at 586–89 (summary of dozens of physical therapy appointments). Physical therapy notes from February 2019 indicate that "PT has had progressively worsening [low back pain]. He has been seen by pain management for numerous procedures & injections which lately have not been helping." *Id.* at 594.

In March 2019, Graziano continued to suffer from shoulder and back pain and stiffness. *Id.* at 576–85. On March 28, 2019, Graziano complained of a stiff and achy lower back and shoulders after travelling and feeling a "pull" in his back when he was carrying luggage. *Id.* at 584. Graziano maintains that he was traveling to visit his parents for a "one-night stay" and that his bag was

"rather light (10 lbs?)." *Id.* at 1098. His physical therapist documented "decreased ROM throughout all planes of the shoulder. Hypertonicity in L/S paraspinals and stiffness when performing L3-L5 PA mobilizations." *Id.* at 584.

At physical therapy in April 2019, Graziano reported his low back felt "the same even after facet injections" and that both shoulders were "painful and tight, especially at night when laying down." *Id.* at 562. Graziano's had tight shoulders with "limited ROM in all planes," "pain with PROM [in] all planes," and lower back pain due to tightness and sitting an excessive amount. *Id.* Other physical therapy reports from April 2019 reported consistent symptoms regarding Graziano's shoulder and back pain and stiffness. *Id.* at 564–77.

On all occasions except one, Graziano reported that his back continued to cause him stiffness and pain. Only once, on April 11, did Graziano report that his back felt better. *Id.* at 568. By May 2019, Graziano's shoulders improved with physical therapy but he still suffered from low back pain. *Id.* at 557. Graziano continue to report sleep disturbances and being unable to work. *Id.*

On May 14, 2019, Unum spoke with Graziano about his disability. *Id.* at 547. Graziano told Unum he was attending physical therapy twice a week, but his prescription ran out and he was concerned that the physical therapy only made his back pain worse. *Id.* He also disclosed that he could only sit for thirty minutes before needing to stand. *Id.* Graziano was using physical therapy to treat his shoulders and was waiting until his condition worsened before exploring surgery. Finally, he noted that his back pain was primarily on his lower right side, but that he noticed new sciatica on his left. *Id.* at 547–48.

In June 2019, Unum obtained a written vocational review from Rolph. Rolph affirmed her prior classification and the sedentary physical demands of Graziano's occupation, but this time found Graziano's occupation was most consistent with "Insurance Underwriter Commercial

12

Property" under the eDOT system.[15] *Id.* at 619.  She also identified several material and substantial

duties of Graziano's occupation, including

> Examines individual applications for commercial property insurance to evaluate degree of risk involved and accepts applications, following company's underwriting policies
>
> Checks such documents as application form, inspection report, insurance maps, and medical reports to determine degree of risk from such factors as applicant's financial standing, age, occupation, accident experience, and value and condition of real property
>
> Audits company records to ascertain amount of insurance in force on single risk or group of closely related risks, and ascertains possibility of losses due to catastrophe or excessive insurance
>
> Declines risks that are too excessive to obligate company
>
> Dictates correspondence for field representatives, medical personnel, and other insurance or inspection companies to obtain further information, quote rates, or explain company's underwriting policies
>
> When risk is excessive, authorizes reinsurance, or when risk is substandard, limits company's obligation by decreasing value of policy, specifying applicable endorsements, or applying rating to ensure safe and profitable distribution of risks, using rate books, tables, code books, and other reference material
>
> Typically, workers who underwrite one type of insurance do not underwrite others and are designated according to type of insurance underwritten

*Id.*

She also disagreed in part with the October 2018 FCE, finding that Graziano's occupation

would not require any lifting over 10 pounds. *Id.* at 618–19.  Unum then sent Rolph's description

to Dr. Beer and asked his opinion regarding Graziano's ability to perform the described duties. *Id.*

at 656–57.  Dr. Beer replied Graziano could not perform them and that, because of his lumbar pain,

---

[15] "eDOT" refers to the Enhanced Dictionary of Occupational Titles. *See Greer v. Unum Life Ins. Co. of Am.*, 3:17-CV-615-CWR-LGI, 2021 WL 4497489, at *8 (S.D. Miss. Sept. 30, 2021).

Graziano was limited to lifting no more than 15 pounds; no standing or sitting for more than 30 minutes; and no bending, stooping, crawling, or climbing. *Id.* Dr. Beer also provided treatment notes—dated June 11, 2019—indicating Graziano had significant lumbar pain with "only rare lower limb radiating pain symptoms," symmetrically reduced bilateral Achilles reflexes, moderate to severe pain limited range of motion, and bilateral positive lumbar facet load testing. Physical therapy had not been particularly helpful and so Dr. Beer prescribed a "McKenzie tailored spine stabilization program with a certified therapist and an appropriate postural bias." *Id.* at 658–60.

Unum spoke with Graziano again in October 2019, who reiterated that his shoulder and back pain largely was the same, and that physical therapy helped more with his shoulder than back. *Id.* at 719. He also noted that Dr. Beer had not prescribed any more physical therapy and that he planned to speak with him about further treatment options for either physical therapy, acupuncture, or injections. *Id.* Graziano had not seen either Dr. Marzek for his shoulders or Dr. Mechanic, his neurologist, but was getting trigger point injections. *Id.* at 719–20. In November 2019, Graziano updated Unum that Dr. Beer had prescribed massages and acupuncture and that his current treatment plan included chiropractic treatment, massages, acupuncture, and trigger point injections. *Id.* at 742. Dr. Beer's treatment notes from November 2019 confirm that Graziano was performing home exercise physical therapy and receiving massage/myofascial release and that his symptoms were "essentially unchanged, but stable." *Id.* at 747. Graziano was to follow-up in six weeks and hold off on injections in favor of chiropractic treatments. *Id.* at 749.

In December 2019, Unum had several additional reviewers consult on Graziano's claim. Unum first asked its reviewing nurse Janice Albert to review his file. *Id.* at 794–98. Albert concluded that Graziano's conditions would not prevent him from working at an occupation that required mostly sitting, standing, or walking for brief periods of time, frequent keyboard use, and

travel. *Id.* at 797. Specifically, she found that the MRIs findings were from a year prior to his disability and documented abnormalities on Graziano's left side when he complained of pain on his right and that the October 2018 FCE, despite finding he could not work, had not documented any clinical changes. *Id.* at 797–98. Graziano further was not taking prescription pain medication and claimed his condition deteriorated without any clear change in his reported symptoms or function. *Id.*

Unum vocational consultant Rusty Peavy also reviewed Graziano's claim. Like Rolph, Peavy identified Graziano's occupation as an Insurance Underwriter, Commercial Property under eDOT and added that travel could occur by automobile and/or air. *Id.* at 802. He could not determine travel frequency, however, as it would be "based on business need." *Id.*

Finally, Unum sought written peer reviews from two physicians. After analyzing Graziano's records, as well as an updated but unchanged opinion from Dr. Beer, Dr. Wendy Weinstein, M.D.[16] concluded that Graziano could perform the sedentary occupational demands described by Rolph and Peavy. *Id.* at 822. Dr. Weinstein concluded there were no other musculoskeletal or neurological abnormalities that would support an impairment preventing Graziano from working full-time or documentation related to restrictions or limitations related to his bilateral shoulder arthritis. She also determined that Graziano had chronic stable symptoms with minimal clinical findings, was receiving conservative treatment, and referenced engaging in activities that were inconsistent with functional impairments preventing him from meeting his occupational demands.

---

[16] Dr. Weinstein is board certified in internal medicine.

*Id.* at 824.  Dr. Suzanne Sergile, M.D.[17] also reviewed Graziano's file and concurred with Dr. Weinstein's conclusions.

### VIII.    Unum Discontinues Payment of LTD and LIP Waiver Benefits

On January 2, 2020, Unum discontinued payment of Graziano's LTD Plan benefits. *Id.* at 834 ("LTD Termination Letter") (finding Graziano no longer disabled as of January 3, 2020). Unum acknowledged that Graziano stopped working in October 2018 due to chronic back pain and that he also reported shoulder pain. *Id.* Unum also determined that the material and substantial duties of his occupation required

> -Mostly sitting, which may involve standing or walking for brief periods of time
> -Lifting, carrying, pushing, pulling up to 10 pounds of force occasionally
> -Frequent reaching primarily at desk level, handling, fingering and keyboard use.

*Id.* at 835.  Unum also found his occupation required travel and would allow for changes in position in brief periods of time throughout the day. *Id.*

As grounds for denial, Unum observed that only Dr. Beer found Graziano was disabled and that its physician reviewers disagreed with his conclusion, that the 2017 MRI revealed "diffuse disc bulges with central to left disc extrusion at L2-L3 that was not felt to cause significant central canal or neural foraminal stenosis," and that Graziano had "positive lumbar facet loading bilaterally but no other musculoskeletal or neurologic exam abnormalities." *Id.* at 835–36.  While Graziano received injections in the past, by 2020 he was only receiving conservative therapy and his June and November 2019 visits with Dr. Beer showed no pain with pressure, signs of radiculopathy, or changes in treatment. *Id.* Unum noted that although he had "low back stiffness,"

---

[17] Dr. Sergile is board certified in occupational medicine.

Graziano could walk for 15-20 minutes on a treadmill and perform light shopping had carried luggage while he traveled. *Id.* Finally, Unum found that Graziano's symptoms improved with physical therapy and no provider suggested his shoulder arthritis caused any occupational restrictions. *Id.* In sum, Graziano had "chronic stable symptoms with minimal diagnostic and examination findings," was receiving "conservative treatment," and his records and treatment did not indicate that his condition was so severe as to prevent Graziano from performing the material and substantial duties of his occupation. *Id.*

IX.    **Administrative Appeal**

Graziano filed an administrative appeal of Unum's denial of benefits on June 30, 2020, and provided additional material and evidence including more records, an updated FCE, and a vocational assessment. *Id.* at 1107–1298.

Graziano submitted an updated, two-day FCE from January 2020 conducted again by Susan Greenberg at Best Physical Therapy Associates. *See id.* at 961–96 ("January 2020 FCE"). The January 2020 FCE updated Graziano's diagnoses to include right low back pain; diffuse degenerative disc disease; disc bulging at multiple levels; facet arthropathy; left lateral disc herniation; bilateral neural foraminal narrowing; mild canal stenosis; right lateral disc herniation at L5-S1, and bilateral shoulder and hip pain. *Id.* at 962. The January 2020 FCE classified his occupation as an underwriter as having "[l]ight-medium" physical demands. *Id.* at 963. In comparing Graziano's gross motor skill results from 2018 and 2020, the 2020 FCE noted that Graziano had decreased left-hand gross motor and dexterity skills and right-hand fine motor skills and that all pinch grips declined as compared to the 2018 FCE. *Id.* at 978–79. Graziano's gross and fine motor skills were all below to significantly or well below average scores. *Id.*

17

The January 2020 FCE also concluded that Graziano had decreased ability to squat or tolerate walking; average hand grip strength on the first day of testing and below to significantly below average bilateral pinch grip strength on the second day of testing; weakness and stiffness of his core and bilateral lower extremities; and increased lower back and shoulder pain, resulting in rapid fatigue. *Id.* at 982–83. The January 2020 FCE found that Graziano could tolerate sitting only occasionally and that needed to change positions at least every 20 to 30 minutes, with the frequency increasing as the day progresses. *Id.* at 983. Graziano rated his pain at 6/10 on the first day, increasing to 9/10 that evening then 7/10 on the second day. *Id.* at 980. Graziano scored a 66% on the Back Index, 38% on the Neck Index, 34% on the Disabilities of the Arm, Shoulder, and Hand, and 9/80 on the Lower Extremity Functional Scale. *Id.* While Graziano's Back Index score was the same compared with 2018, his Lower Extremity Functional Scale dropped 10 points from 19/80 to 9/80.

The January 2020 FCE ultimately concluded that Graziano still could not tolerate an 8-hour workday at the light or sedentary physical demand level and that he remained totally disabled from his occupation. *Id.* The January 2020 FCE also noted there was no significant improvement from the 2018 FCE; that the results were generally consistent; and that some scores, particularly involving the right-hand fine motor skills and pushing, were significantly lower. *Id.* at 987. Graziano again met all eleven of the FCE consistency checklist markers. *Id.* at 966–70. His motor skills—particularly in his left hand—also diminished between 2018 and 2020. *See id.* at 975.

Second, Graziano submitted a vocational assessment dated May 5, 2020, from vocational expert Amy Leopold. *Id.* at 1374. In completing her evaluation, Leopold reviewed Graziano's medical records; his resume and job description; the October 2018 FCE; Dr. Beer's various treatment notes, reports, and letters submitted to Unum in support of Graziano's disability claim;

18

and the correspondence regarding Graziano's claim between Unum, Graziano, and Dr. Beer. *Id.* at 1375. Leopold also interviewed Graziano in March 2020, who reported "chronic and severe low back pain" plus pain and numbness from his shoulders into both arms and hands. *Id.* This pain required Graziano to constantly shift position, disturbed his sleep, and left him unable to complete repetitive activities. *Id.*

Based on the job description provided by Graziano, Leopold concluded that Graziano's occupation as a Senior Underwriter/Vice President "most closely" related to an "Underwriter" in the DOT system and an "Insurance Underwriter" in the O*Net Online System. *Id.* at 1385–86.[18] DOT classifies the "Underwriter" position as based on a light-sedentary strength classification, but Leopold classified Graziano's position as "light" due to the amount of travel required, which itself required walking or standing to a significant degree. *Id.* at 1386.

She also found that as a Senior Underwriter/Vice President, Graziano was "constantly building and maintaining business relationships to recruit new business and service accounts . . . including marketing, modeling, pricing, capacity, and referral tools, as well as supervisory responsibilities" and that he spent significant time traveling to client meetings and presentations. *Id.* at 1389. Leopold also opined that because of his spinal conditions and related symptoms Graziano was unable to meet the demands of his work. *Id.* at 1389–90. She concluded that Graziano was unable to perform the duties of "any profession requiring extended time sitting, standing, or walking, or using a computer, as well as any occupation that requires travel." *Id.* at 1392. Graziano was

---

[18] The DOT system refers to the Dictionary of Occupational Titles published by the United States Department of Labor. The DOT was replaced in 1991 by the O*Net system, which is the Department of Labor's primary source of occupational information. *See* Dep't of Labor, *Status of the Dictionary of Occupational Titles; use in Social Security disability adjudications*, https://www.dol.gov/agencies/oalj/topics/libraries/LIBDOT (last accessed June 14, 2023).

"unable to tolerate a full-time work schedule and could be expected to be absent from work as a result of his symptoms several times monthly, which would not be tolerate[d] by any employer," and had "less than a sedentary work capacity from both a physical and cognitive standpoint." *Id.*

Third, Graziano submitted a residual functional capacity questionnaire dated May 20, 2020, completed by Dr. Beer. *Id.* at 1174–78. Dr. Beer diagnosed Graziano with, *inter alia*, lumbar radiculopathy, chronic pain, lumbar facet pain, and diffuse degenerative disc disease. Dr. Beer noted that Graziano experienced chronic and daily fatigue and weakness that was exacerbated by walking, standing, and sitting for prolonged periods and impaired his day-to-day functioning.[19] Graziano suffered from moderate to severe low back pain, on his right more than his left, that was constant and ranged from dull and throbbing to sharp and burning. Graziano could only sit or stand for 25 to 30 minutes before he needed to change positions, which he needed frequently needed to do. He further required 3-5 or more unscheduled breaks during an 8-hour workday. Some days, according to Dr. Beer, were worse than others. Dr. Beer ultimately concluded that Graziano did not overstate his symptoms and that he was totally disabled. *Id.*

Fourth, Graziano submitted various office visit notes and medical records from March 2020 through May 2020. *Id.* at 1198–1272. On March 6, 2020, Graziano saw Dr. Weymin Hago, M.D.[20] for an annual physical exam. *Id.* at 915. The record does not reflect whether Dr. Hago previously

---

[19] Dr. Beer also noted Graziano suffered from medication side-effects like drowsiness, fatigue, headaches, and cognitive deficits. It is unclear however which, if any, medications Graziano was taking would cause such side effects nor does it appear that Dr. Beer ever prescribed any medications. Graziano does take several medications as prescribed by other doctors for other conditions, including his diabetes.

[20] Dr. Hago is board certified in internal medicine and specializes in preventative medicine and diabetes, sleep disorder, and hypertension.

treated Graziano, or for how long. Dr. Hago noted that Graziano had a history of arthralgia, neck and back pain, and joint stiffness and no history of ambulatory difficulties, swelling, or motor weakness. *Id.* at 917. Dr. Hago's treatment notes reflect that he found Graziano's lumbar spine, gait, heel walking, and toe walking all "normal." *Id.* at 918. As relevant here, he diagnosed Graziano with chronic back pain and listed his treatment plan to include "[c]ontinue[d] PT/stretching and acupuncture." *Id.*

Also included are several visit notes from Dr. Beer that indicate Graziano's bilateral Achilles reflexes that were symmetrically reduced; his lumbar range of motion was moderately to severely pain limited; and had positive bilateral lumbar facet load testing. His notes from May 2020 note that due to COVID-19 concerns, Graziano was holding off on additional treatments. Dr. Beer on multiple occasions prescribed a McKenzie tailored spine stabilization program with a certified therapist. *Id.* at 1198–1201. Graziano also submitted a patient health summary from Weill Cornell Medicine indicating chronic right-sided low back pain without sciatica, bilateral axillary (shoulder) nerve injuries, and lumbar region spondylosis[21] without myelopathy or radiculopathy. *Id.* at 1211–68.

Finally, Graziano submitted witness statements from his friend, Mark Reisig, and his wife, Alexis Graziano, and his own affidavit. Reisig's letter noted that Reisig heard from "others in the industry" how Graziano did not show up to work events, which Reisig attributes to his back issues. *Id.* at 1274. Graziano's wife corroborated that Graziano first began having back pain in 2014 and by 2016 was unable to dress himself for work. *Id.* at 1275. She also confirmed that while Graziano

---

[21] Spondylosis refers to degenerative changes in the spine, also known as osteoarthritis. *See Stellmaszyk v. Berryhill*, 16cv09609 (DF), 2018 WL 4997515, at *8 n. 40 (S.D.N.Y. Sept. 28, 2018).

21

does "some of the light household cleaning chores and shopping" she completes nearly all of the chores. *Id.* at 1276. Finally, she noted that any vacations they take are infrequent because Graziano cannot endure long car or plane rides. *Id.*

In his affidavit, Graziano maintained that he has suffered from lower back and shoulder pain and limited range of shoulder movement since at least 2012. *Id.* at 1086. Graziano visited several different physicians and tried various treatments, including physical therapy and injections, but none provided lasting relief. *Id.* 1086–90. In 2018, Graziano realized that his shoulder pain increased to further limit his range of motion and had become "a distraction to work." *Id.* at 1092. Graziano's doctors diagnosed him with osteoarthritis and told him that "the only relief would happen with shoulder replacement." *Id.* at 1092. He failed to follow-up with these diagnoses, though, because he felt he was "too young for a shoulder replacement." *Id.* Graziano had difficulty traveling, commuting, sitting, and standing for extended periods of time, which made it difficult to adequately perform as a Senior Underwriter. *Id.* at 1093–96. As of May 2020, he continued to suffer from lower back pain and shoulder pain, which made it difficult to shower and dress himself. *Id.* at 1099.

At that time, Graziano was also receiving massage therapy and trigger point injections once a week, which provided temporary relief to his shoulders and hips. *Id.* at 1100. He could go to the supermarket once or twice a week, although shopping took longer than normal, and could not carry heavy items. *Id.* at 1100–01. He used light electric brooms and mops but was unable to do laundry or heavy cleaning, especially cleaning that involves bending. *Id.* at 1101. He could not run, jog, play ball or bend and needs professional landscapers to care for his yard. *Id.* Finally, he could not type or move a mouse for more than 10 minutes without a break. *Id.* at 1102.

22

Unum in response submitted Graziano's file (including the updates submitted with his appeal) to vocational consultant Kelly Marsiano, and Reviewing Physician Dr. Scott Norris, M.D.,[22] among others, for review.   Marsiano agreed with Unum's prior description of Graziano's occupation.   She also updated the occupational information to include cognitive demands, classifying the position as "skilled" and requiring attaining precise set limits, tolerances, and standards; dealing with people and interpersonal relationships beyond receiving work instructions; and making judgments and decisions. *Id.* at 1718.

In August 2020, Dr. Norris reviewed Graziano's appeal. *Id.* at 1730–35. Dr. Norris opined that "[t]o a reasonable degree of medical certainty" from January 3, 2020, and ongoing, the reported existence, severity, duration, and frequency of Graziano's signs and symptoms were inconsistent with his underlying injuries and the documentation in his file. *Id.* at 1733–34. Dr. Norris opined that the "limited examinations" of Graziano's treating physicians and the "low intensity" of his back and shoulder treatments were not consistent with the severity of the Graziano's reported impairments. *Id.* Dr. Norris also noted that Graziano's medical imaging did not show severe nerve root impingement, significant central canal stenosis, or other findings that would preclude sedentary activity. *Id.* at 1734. Dr. Norris also noted that Graziano did not receive prescription pain medication, additional injections for his back or any for his shoulder, or surgery. *Id.* He disagreed with Dr. Beer's opinion that Graziano suffered from drowsiness and impaired cognitive deficits caused by medication side effects, noting that Graziano had not been prescribed pain medication nor did he report impairing medication side effects at his doctors visits. *Id.* Dr.

---

[22] Dr. Norris is board certified in Family Medicine, Occupational Medicine, and Aerospace Medicine.

Norris endorsed some limited restrictions for his shoulders and found he was capable of "less than occasional reaching above shoulder level, occasional reaching to shoulder level, and up to frequent reaching at desk level." *Id.* In response to Dr. Norris's opinion on Graziano's shoulder restrictions, another Unum vocational expert, Shannon O'Kelley, evaluated Graziano's claim and came to substantially the same conclusions as prior Unum vocational reviewers regarding the demands of Graziano's regular occupation and his ability to perform them. *Id.* at 1753–54.

Unum provided these new reviews to Graziano in August 2020. In September 2020, Graziano submitted even further materials in response, including a September 2020 letter from Dr. Beer; August and September 2020 records from Dr. Beer and Dr. Marzec; physical therapy prescriptions from Dr. Marzec; lumbar spine and left hip MRIs from September 2020 ("September 2020 Lumbar MRI" and "September 2020 Hip MRI," respectively), and an addendum from Leopold. *Id.* at 1768–91.

Leopold's addendum reiterated her initial determination, her belief that travel was "critical" to Graziano's occupation, and that his lumbar conditions and related symptoms rendered him unable to meet the demands of his occupation, even while working remotely. *Id.* at 1772–75. She again found that Graziano could not "tolerate an 8-hour workday due to positional intolerances in sitting and standing (must change positions every 20 to 25 minutes)" and that he "experience[d] severe and chronic pain as a result of his conditions and [was] disabled from performing even sedentary work." *Id.* at 1774.

The September 2020 Lumbar MRI revealed moderate multilevel degenerative disc disease and bulging disc with moderate bilateral foraminal stenosis at L5-S1; bulging disc and "large superimposed central to left paracentral disc herniation at L2-3, with moderate central canal and left later recess stenosis"; and bulging disc and mild to moderate bilateral foraminal stenosis at L3-

4, L4-5, and L5-S1. *Id.* at 1789. The September 2020 Hip MRI was "[u]nremarkable" regarding the left hip join, with no significant labral tears or degenerative changes but indicated tendinosis and a low-grade partial tear of the left common hamstring tendon. *Id.* Graziano also submitted August and September 2020 office visit notes from Dr. Marzec regarding Graziano's shoulder pain that reflect that Graziano had "R[ight] L[ow] back spam"; "Tender R[ight] SI joint"; and "marked loss of [active range of motion]" in both shoulders. *Id.* at 1781–84.

Unum sent these additional materials back to Dr. Norris for review in October 2020. *Id.* at 1801–03. Dr. Norris acknowledged that "exam findings included lumbar spasm w[ith] reduced ROM and chronic reduction of ankle reflexes" but that Graziano's upper and lower extremity motor strength, sensation and gait "remained normal." *Id.* at 1803. He also acknowledged that the September 2020 Lumbar MRI "showed chronic moderate multilevel degenerative changes with some progress since a 2017 study." *Id.* Dr. Norris reiterated that his August 2020 conclusion remained unchanged, however, and noted that Graziano did not have myotonal/dermatomal motor or sensory changes, no reduction in the patellar reflex, no radicular pain of the lower extremities, and was receiving sporadic, conservative treatment. *Id.*

In response to Leopold's assessment, O'Kelley submitted an additional addendum *Id.* at 1805–09. While O'Kelley disagreed with Leopold's assessment that Graziano's conditions medically supported his alleged disability and her finding that travel was a material and substantial duty of his regular occupation, the two largely agreed that any duties would include in large part sitting.

In one of their final exchanges, Unum sent these addendums to Graziano for review. On November 2, 2020, Graziano responded with another letter from Dr. Beer and copies of his physical therapy records. The physical therapy records include a treatment note from October 28,

25

2020, when Graziano attended physical therapy on referral from Dr. Marzec for his shoulders. *Id.*

at 1837–41. The physical therapy report found that Graziano had difficulty or was unable to carry

laundry baskets, clean high shelves, put dishes away, carry heavy shopping bags, push and carry a

vacuum, and dressing himself when he needed to reach behind his back. *Id.* at 1837. Graziano

had pain on all active and resisted motion. Graziano had 2+/5 shoulder flexion; 2/5 abduction; 2/5

internal rotation; and 2/5 external rotation on his right shoulder and 2+/5 flexion; 2+/5 abduction;

2/5 internal rotation; and 2/5 external rotation in his left shoulder. *Id.* Grind, clunk, and Speed's

test were all negative bilaterally, but the empty can test was positive in both shoulders. *Id.*

Graziano had a 72.5% disability according to the Disabilities of Arm, Shoulder, and Hand scale.

*Id.* at 1838.

Dr. Beer's October 29, 2020, letter disagreed with Dr. Norris's opinion. He wrote that Dr.

Norris failed to account or provide for any limitations related to Graziano's lumbar conditions,

opined that Graziano needed frequent breaks and the option to change position or lie down and

rest "as needed," and that he would be off task "at least 20% during normal workday . . . in excess

of that allowed by any employer." *Id.* at 1835. Dr. Beer also found that Graziano's lack of physical

therapy was not indicative of the severity of his disability but was reasonable in light of the

COVID-19 pandemic because his comorbidities rendered him an at-risk individual. *Id.* at 1836.

On November 10, 2020, Unum issued its final decision upholding its denial of LTD and LIP

Waiver benefits. *Id.* at 1847–58. Unum found that Graziano was only receiving limited,

conservative treatment for his conditions, had never reported hip or shoulder pain to his providers,

and the record lacked any evidence of medication-induced side effects. It further found that Dr.

Beer's examinations did not describe lower extremity neurological deficits or other motor/sensory

findings consistent with limiting radiculopathy and that Graziano's MRIs lacked evidence of any

severe abnormalities. Overall, Unum concluded Graziano's conditions were stable and low intensity and that he was not disabled. *Id.*

## DISCUSSION

Under ERISA Section 502(a)(1)(B), "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  Graziano brings this action to recover LTD Plan benefits and LIP Waiver benefits denied by Unum.

### I.   **Standard of Review**

A denial of benefits under ERISA must "be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 102, 115 (1989).  The parties here agree that the plan is not discretionary and that the appropriate standard of review is *de novo*.[23]  The Court's *de novo* review "applies to all aspects of the denial

---

[23] Given the standard of review, the Court need not consider Graziano's claim that in its denial, Unum denied him a full and fair review of his claim in violation of 29 C.F.R. § 2560.503-1(h)(3)(iii) by not adequately reviewing the October 2020 physical therapy and Dr. Beer letter materials. Pursuant to 29 C.F.R. § 2560.503-1(l)(2)(i), a plan's failure to "strictly adhere to all the requirements of [Section 503-1] with respect to a claim" for disability benefits entitles a claimant to pursue remedies under Section 502(a) of the Act, where the "claim or appeal [will be] deemed denied on review without the exercise of discretion by an appropriate fiduciary." *See also Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 45 (2d Cir. 2016) ("[W]hen denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court . . . ."). Thus, the proper remedy for any alleged violation is what the parties already agree applies in this case: the Court's *de novo* review. *See also Sigal v. Met. Life Ins. Co.*, 16-CV-3397 (JPO), 2018 WL 1229845, at *7, n.7 (S.D.N.Y. Mar. 5, 2018). Indeed, Graziano admits

of an ERISA claim, including fact issues," and the Court owes no deference to the administrator's determination. *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003) (quoting *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 245 (2d Cir. 1999)).[24]

## II.   **Applicable Law**

A participant or beneficiary of an ERISA-covered plan may sue "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B).  The plaintiff bears the burden of establishing by a preponderance of the evidence that he was disabled as defined by the administrator's policies and is therefore entitled to benefits. *See Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 441 (2d Cir. 2006); *Aitken v. Aetna Life Ins. Co.*, 16 Civ. 4606 (PGG), 2018 WL 4608217, at *15 (S.D.N.Y. Sept. 25, 2018).

In reviewing a disability claim *de novo*, the Court considers opinions of an insured's treating physicians, the administrator's reviewing physicians, and an insured's own self-reports of his symptoms. *See Milano v. Provident Life & Casualty Ins. Co.*, 19-CV-3357 (VEC), 2020 WL 7388689 at *8 (S.D.N.Y. Dec. 16, 2020), *aff'd*, 21-97-cv, 2022 WL 103314 (2d Cir. Jan. 11, 2022) (summary order).  "[A]n insured's own reports of symptoms are not merely evidence of a disability but are an important factor to be considered in determining whether the insured has established disability." *Milano*, 2022 WL 103314, at *1 (2d Cir. Jan. 11, 2022) (summary order) (internal quotation marks omitted).  "[S]ubjective evidence of [a claimant's] pain, based on [his] own testimony and the medical reports of examining physicians, is more than ample to establish [his]

---

as much in his reply, recommending that "the Court make its own independent review of the existing record" if it finds that Graziano was denied a full and fair review.  Pl.'s Reply at 1–2.

[24] Many if not most of the cases cited by Unum in support of its position are therefore inapposite, as they rely on the significantly more deferential arbitrary and capricious standard.

disability, if believed." *Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 486 (2d Cir. 2013) (internal

quotations omitted) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).   Although no

special deference towards treating physicians is required under ERISA, a district court engaging

in *de novo* review may "evaluate and give appropriate weight to a treating physician's

conclusions," "if it finds these opinions reliable and probative." *Pease*, 449 F.3d at 442.

## III.   <u>Analysis</u>

### a.   <u>The Court Declines to Consider the August 2021 Social Security Decision</u>

"[W]hen reviewing claim denials, whether under the arbitrary and capricious or *de novo*

standards of review, district courts typically limit their review to the administrative record before

the plan at the time it denied the claim." *Halo v. Yale Health Plan, Dir. of Benefits & Records*

*Yale Univ.*, 819 F.3d 42, 60 (2d Cir. 2016). "The court 'may expand its review of an administrative

decision beyond the record in front of the claims administrator upon finding "good cause"

warranting the introduction of additional evidence.'" *Galuszka v. Reliance Stand. Life Ins. Co.*,

Case No. 2:15-cv-241, 2017 WL 78889, at *2 (D. Vt. Jan. 9, 2017) (quoting *Krizek v. Cigna Grp.*

*Ins.*, 345 F.3d 91, 97 (2d Cir. 2003)). "The claimant bears the burden to allege facts, with sufficient

specificity, that would support the existence of good cause permitting the admission of additional

evidence beyond the administrative record." *Garrett v. Provident Life & Cas. Ins. Co.*, 11-CV-

00133 (DG) (PK), 2021 WL 1946330, at *4 (S.D.N.Y. May 14, 2021) (cleaned up).

In his trial brief, Graziano refers to a favorable decision ("SSA Decision") from an

Administrative Law Judge ("ALJ") awarding Graziano Social Security disability benefits. *See*

Maddox Decl. Ex. 1. The SSA Decision was issued on August 4, 2021, well after the close of the

administrative record in November 2020. The parties, however, agreed to include is as part of the

stipulated trial record. The Court need not consider whether the "good cause" standard applies in

this circumstance or whether it's met because the SSA Decision is ultimately entitled to little to no weight. The SSA Decision considered evidence post-dating Graziano's disability claim here. *See Muller*, 341 F.3d at 125–26 ("As to the SSA decision, it was made after First Unum's review had been completed and has little independent probative value.").

Further, the SSA Decision is internally inconsistent. *See* Ex. 1 at 4–7. The ALJ found that Graziano could perform sedentary work, but also that Graziano was limited to less than sedentary work. He further classified Graziano's work as sedentary, found that Graziano could perform sedentary work, but still determined that Graziano could not perform any past relevant work. While it could be possible to reconcile with further explanation the ALJ's decision regarding Graziano's work capacity, it is far from clear based on the decision alone whether or not the ALJ ultimately determined that Graziano could or could not perform sedentary work. The Court thus considers the administrative record without reference to the ALJ's decision.

  b.  Definition of Occupation under LTD Plan

Under the LTD Plan, Graziano is disabled if he is limited from performing the material and substantial duties of his regular occupation due to his sickness of injury. LTD Policy at 16.[25] Although they disagree as to whether Graziano's regular occupation is light or sedentary, they agree that sitting is a material and substantial duty. Nor do they dispute that Graziano suffers from lumbar and hip conditions that cause him pain and decreased range of motion. Rather, the relevant issue is whether the severity of Graziano's conditions diminish his functional capacity such that he cannot perform his occupation as required under the LTD Plan. Even construing the physical

---

[25] The parties do not appear to dispute that Graziano had a 20% or more loss in his monthly indexed earnings due to the same sickness or injury.

demands of Graziano's occupation in Unum's favor to require mostly sitting, Graziano is still disabled under the terms of the LTD Plan.

### i. Sitting Requirements

Graziano maintains that he cannot perform the sitting requirements of his regular occupation because his suffers from debilitating pain and stiffness from lumbar and hip conditions. Having considered the entire record, the Court agrees.

When Unum terminated Graziano's disability benefits, he continued to suffer from various lumbar conditions without any documented improvement. To the contrary, Graziano continuously submitted evidence of his persistent (and deteriorating) condition including treatment notes, Dr. Beer's opinions, and multiple FCEs and MRIs.

Unum maintains that, nevertheless, Graziano's condition was not so severe as to disable him within the terms of the LTD Plan. Both parties' medical experts agree what Graziano's diagnostic imaging shows, but disagree as to its impact—*i.e.*, causing pain and stiffness—on his ability to sit for the majority of an 8-hour workday. Dr. Beer maintains the positive physical tests he identified, the MRIs, FCEs, and Graziano's complaints of pain are adequate to show disability. Unum's reviewers disagree and claim that Graziano's MRIs do not show severe conditions and his negative tests indicate no functional impairments. Notably, most of Unum's criticism of the 2018 and 2020 FCE relate to its findings regarding Graziano's shoulders and hips, not his back. Thus, in the face of two competing opinions, the Court will evaluate Graziano's complaints of pain and weakness as supported by objective evidence included in the administrative record. *See Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 136–37 (2d Cir. 2001).

Dr. Beer maintains that Graziano is unable to meet the sitting requirements of even a sedentary occupation and is fully disabled under the terms of the LTD Plan. While there is no "treating

physician rule" under an ERISA *de novo* review, the Second Circuit has suggested that factors such as "the length and nature of [the patient-physician] relationship, the level of the doctor's expertise, and the compatibility of the opinion with the other evidence" may provide guidance to a Court evaluating competing medical opinions. *Id.* at 135–36.[26]

In this regard, Dr. Beer's opinion is more credible than Unum's reviewers. Dr. Beer has been Graziano's treating physician for his lumbar and spinal pain since 2015—prior to his disability claim—is board certified in Physical Medicine and Rehabilitation, and is a pain management and spinal specialist focusing on non-surgical treatment for patients suffering from acute spinal injuries. *See id.* at 1770. Dr. Beer has repeatedly and consistently maintained that Graziano's lumbar conditions prevent him from performing the sitting requirements of his occupation since Graziano first applied for benefits in October 2018. His opinion is supported by both his treatment notes (reflecting reduced Achilles reflexes, limited lumbar range of motion, positive lumbar facet load testing, and Graziano's consistent complaints of severe lumbar pain); Graziano's MRIs (noting Graziano suffers from canal stenosis and degenerative disc disease); and the 2018 and 2020 FCEs finding Graziano unable to sit as required. *See Chicco v. First Unum Life Ins. Co.*,

---

[26] Graziano claims that Unum is bound by a Regulatory Settlement Agreement that requires Unum to give heightened weight to treating physician opinions and Social Security benefits decisions. Pl.'s Tr. Br. at 17, ECF No. 35; Pl.'s Reply Brief at 7, ECF No. 45. Unum fails to address the agreement or its effect on Graziano's claim in its brief. It appears that there is some form of settlement agreement in place governing Unum's reviewing practices. *See, e.g., Murphy v. First Unum Life Ins. Co.*, 15-CV-820 (SJF) (SIL), 2016 WL 526243, at *5 (E.D.N.Y. Feb. 9, 2016). However, other than claiming that Unum's claims manual was produced in this litigation and citing generally to "Ex. 2," Graziano does not cite to any specific portion of the record indicating where these materials can be found. The Court has been unable to locate it itself in the over 1,800 pages of records contained within Exhibit 2 and therefore declines to opine on a settlement agreement or manual that does not appear to be in the record or before the Court for review.

20cv10593 (DLC), 2022 WL 621985 at * 4 (S.D.N.Y. Mar. 3, 2022) *partial reconsideration granted on other grounds*, 2022 WL 973733 (S.D.N.Y. Mar. 30, 2022)  (noting a court may give "the opinions of examining physicians significant weight if a review of the record makes it appropriate to do so"); *Barbu v. Life Ins. Co. of N. Am.*, 35 F. Supp. 3d 274, 289 (E.D.N.Y. 2014) (finding treating physician more credible than insurance reviewer because of, *inter alia*, the "typical doctor-patient relationship" between the treating physician and claimant that "did not begin in the context of litigation.").  By contrast, none of Unum's reviewers specialize in rehabilitation or pain management nor ever personally examined Graziano. *See Chicco*, 2022 WL 621985 at * 4  ("It is significant that none of First Unum's physicians personally examined [the claimant].").  And, although Dr. Beer was Graziano's only physician who opined on Graziano's occupational restrictions, none of Graziano's various doctors ever disagreed with Dr. Beer or found that Graziano could return to work.

Most of Unum's objections to the severity of Graziano's conditions stem not from an analysis of his medical evidence, but from his response to his disability.  First, contrary to Unum's assertions, Graziano's decision to stop working was not made on his own.  Dr. Beer's treatment notes from October 15, 2018 (three days before Graziano applied for benefits) describe that Dr. Beer "[r]ecommended [Graziano] remain out of work until further notice." LTD at 170.

Second, Unum inappropriately discredited the severity of Graziano's lumbar condition because, according to their reviewers, Graziano's "conservative" treatment was disproportionate to the alleged severity of his pain. But Graziano's treatment plan was far from conservative. Over a multi-year period, Graziano received numerous rounds of medical branch injections, steroid injections, and lumbar radiofrequency ablation treatments and attended physical therapy. Graziano

specifically stopped receiving lumbar injections after consulting with Dr. Beer because—despite receiving over half a dozen injections—they failed to provide any substantial relief.

Unum also mischaracterizes Graziano's approach to opioid pain medication. Dr. Beer supported Graziano's decision to abstain from opioid pain medication stemming from Graziano's concerns about addiction and dependency and opined that this was not indicative of the seriousness of Graziano's condition. Dr. Beer never prescribed opioids nor suggested that they were necessary for Graziano's conditions. While discontinuing pain medication could be a sign that an insured's condition improved, Graziano never stopped taking pain medication. Rather, he was never prescribed it in the first place, something Unum was presumably aware of when it initially approved his short-term and long-term disability benefits. The Court thus credits the evidence within the administrative record and that Graziano's approach was endorsed by his long-term physician who, as a board-certified, pain management specialist, felt Graziano's lack of pain medication was not indicative of the severity of Graziano's condition.

Nor is the Court persuaded that Graziano's lapse in physical therapy precludes him from recovering benefits. In May 2020 Graziano told Dr. Beer that he was holding off on additional treatments out of concerns about COVID-19. This concern is justifiable because Graziano suffers from several comorbidities like obesity and Type 2 diabetes that put him at an increased risk of serious health consequences were he to contract COVID-19. *See United States v. Ramirez*, 19 Cr. 105 (LGS), 2020 WL 4577492, at *2 (S.D.N.Y. Aug. 6, 2020) (noting that diabetes and obesity contribute to higher risk for severe disease or death from COVID-19).

Unum asserts that Graziano's concerns about contracting COVID-19 were not credible because "the relevant timeframe related to [his] benefits [was] January 3, 2020, which is prior to the pandemic." *Id.* at 1854. However, prior to the onset of most stay-at-home orders in March

2020, Graziano was having ongoing conversations with his physicians and Unum about the efficacy of his in-person physical therapy, was performing at-home exercises, and was exploring getting further physical therapy prescriptions from Dr. Beer. Further, despite Unum's contentions that its denial was based on pre-pandemic behavior, Dr. Norris's medical addendum faulted Graziano for not attending physical therapy in August and September 2020, well after the onset of the pandemic and prior to any widespread availability of vaccines. *Cf. Joffee v. King & Spalding LLP*, 575 F. Supp. 3d 427, 430 (S.D.N.Y. 2021) (observing that by December 2021, vaccines were "widely available"). Finally, as of October 2020, Graziano had resumed physical therapy at least for his shoulders. The Court credits under these circumstances Graziano and Dr. Beer's explanation that his failure to attend physical therapy stemmed from a desire to avoid putting his health in serious jeopardy from COVID-19, not from any improvement in his medical condition is acceptable.[27]

Unum's attempts to discredit Dr. Beer's findings, the MRIs, and both FCEs are also unpersuasive. First, by October 2018 Graziano demonstrated—supported by Dr. Beer's opinion, the 2018 FCE, contemporaneous treatment notes, and the 2017 MRI—that his disability prevented him from working in his regular occupation. When Unum terminated Graziano's benefits, it was "not in response to an application of benefits, but rather a reversal in policy preceded by no significant change in [Graziano's] condition." *Connors*, 272 F.3d at 136. While Unum maintains

---

[27] The Court's ruling should not be construed as an endorsement that an absence of treatment like physical therapy, medication, or surgery will always entitle a claimant to benefits. Rather, its decision is limited to the combination here of Graziano's active conversations with his physicians about the efficacy of physical therapy; a chiropractic/acupuncture-based treatment plan; his undisputed degenerative lumbar conditions; the consistent endorsements by Dr. Beer, Leopold, and both FCEs that Graziano is limited to less-than-sedentary capacity; and the pandemic.

that it adopted a "wait-and-see" approach with Graziano's claim regarding his compliance with physical therapy, Graziano's records reflect that his lumbar condition actually *worsened* during the pendency of his claim review and appeal. *Compare* October 2017 MRI (stenosis at only one level, L2-L3) *with* September 2020 Lumbar MRI (stenosis at four levels, L2-L3, L3-L-4, L4-L5, L5-S1, and new nerve root impingement at L2-3).

Unum is correct that Graziano continues to bear the burden of showing his entitlement to disability benefits under the LTD Plan, notwithstanding a prior award. *Alfano v. CIGNA Life Ins. Co. of New York*, No. 07 Civ. 9961 (GEL), 2009 WL 222351, at *14 (S.D.N.Y. Jan. 30, 2009). Nevertheless, its policy reversal in light of Graziano's worsening lumbar conditions "weighs against the administrator and in favor of the claimant." *Id.*; *see also Tretola v. First Unum Life Ins. Co.*, No. 13 Civ. 231 (PAE), 2015 WL 509288, at *22 (S.D.N.Y. Feb. 6, 2015) (The fact that [the claimant] had been judged to be disabled . . . is relevant evidence as to that issue, but it does not shift the burden of proof from [the claimant] to First Unum.").

Finally, contrary to Unum's assertions, Graziano's commute was not the sole or even significant motivating factor behind his disability claim. In the same affidavit referenced by Unum, Graziano reported that his "work was suffering from his inability to . . . sit for any length of time to put information into our computer systems (taking many hours a day with new systems now available)." *Id.* at 1288. He also repeatedly told Unum's reviewers who contacted him during their review that he was unable to sit as needed for his work.[28] In sum, the record adequately

---

[28] Graziano's hip conditions also support—albeit with significantly less force—his inability to sit as required by his occupation. On the one hand, Graziano has documented medical evidence supporting that he suffers from a hip condition: an MRI performed in September 2020 showed no significant labral tears or degenerative changes but indicated tendinosis and a low-grade partial tear of the left common hamstring tendon. And while there is no mention of any hip conditions in

demonstrates by a preponderance of the evidence that Graziano cannot perform the sitting requirements of his occupation.

### ii.  Sitting As the Sole Basis for Disability

Under the terms of the LTD Plan, Graziano is disabled if he cannot perform the material and substantial duties of his regular occupation.  Graziano maintains that even one deficiency in a material and substantial duty renders him disabled under the LTD Plan, a point Unum does not dispute.

"When conducting a *de novo* review of an ERISA plan benefit determination, a court's analysis is much the same as in interpreting an ordinary contract, as 'unambiguous language in an ERISA plan must be interpreted and enforced in accordance with its plain meaning.'" *Glickman v. First Unum Life Ins. Co.*, 19-CV-5908 (VSB), 2023 WL 3868519, at *3 (S.D.N.Y. June 7, 2023) (quoting *Perreca v. Gluck*, 295 F.3d 215, 223 (2d Cir. 2002) (citation omitted); *see also Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (courts are to "review the [ERISA] Plan as a whole, giving terms their plain meanings.")  "If there are ambiguities in the language of an insurance policy that is part of an ERISA plan, they are to be construed against the insurer." *Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir. 2004).

_____

his October 2018 FCE, the January 2020 FCE noted bilateral hip pain and considered this in its evaluation of Graziano's physical abilities and its ultimate recommendation that Graziano is unable to sit as required by his occupation.  However, none of Graziano's numerous treatment notes reflect any complaints of hip pain nor has not submitted any medical evidence opining on the severity of his hip condition, any treatment he is receiving for it, or a medical opinion on the impact that it would have on his ability to sit as required by his occupation.  And, by May 2020, the pain had "subsided a bit" and Graziano was reluctant to "start planning hip transplants." *Id.* at 1100.

The LTD Policy does not define how many "material and substantial duties" a claimant must be unable to perform to be benefit eligible. On the one hand, the plain language of the LTD Plan's phrasing in the plural indicates that the LTD Plan anticipates more than one unavailable duty. There are plans, however, that require some multiplicity of deficiencies and when they do, do so specifically. *See, e.g., Miles*, 720 F.3d at 475 ("[A] member will be considered disabled 'if, solely and directly because of sickness [or] injury,' the member 'cannot perform the *majority* of the Substantial and Material Duties of his or her Own Occupation.'" (emphasis added)).

On balance, the Court concludes that if Graziano is precluded by reason of his disability from sitting as necessary for his occupation, he is disabled under the LTD Plan. Graziano's occupation, even considered most favorably to Unum, is a desk job that requires mostly sitting. The Court is hard-pressed to imagine how Graziano would be capable of performing even a sedentary occupation if he cannot sit as needed. He is thus disabled and entitled to benefits under the LTD Plan.[29]

c. Definition of Occupation under the LIP Waiver

Under the LIP Waiver, a claimant is disabled when "due to the same injury or sickness, [he is] unable to perform the duties of any gainful occupation for which [he is] reasonably fitted by training, education, or experience." LIP Waiver Policy at 34. The LWOP further defines "gainful occupation" as "an occupation that within 12 months of your return to work is or can be expected to provide you with an income that is at least equal to 60% of your annual earnings in effect just prior to the date your disability began." *Id.* at 52. Graziano's vocational expert opined that

---

[29] Because the Court finds Graziano has sustained his burden of proving his inability to sit, it declines to address whether any keyboarding, cognitive, scheduling, or travel requirements are material and substantial or Graziano's ability to perform these requirements.

Graziano's "low back pain, diffuse degenerative disc disease, facet arthropathy, left disc extrusion, multiple level disc bulging, and related symptoms" prevent him from performing "any occupation commensurate with his training, education, and experience." *Id.* at 1392. Any desk job would likewise require Graziano to sit for the majority of the day. Nor does Unum raise any argument to the contrary, other than simply asserting that because Graziano is not disabled under the lesser "material and substantial duties" standard, he is not disabled under the "any gainful occupation" standard. Graziano is therefore also entitled to benefits under the LIP Waiver.

## IV.   **Benefits Post-Administrative Record**

Graziano has been disabled within the LTD Plan since January 3, 2020, through the close of the administrative record on November 10, 2020. The Court declines to award Graziano benefits through the present. The administrative record ended on November 10, 2020, when Unum issued its final denial of benefits. There is no evidence from Graziano (other than the SSA Decision discussed above) after October 29, 2020. Thus, neither the Court nor Unum has had the opportunity to review any additional documentation submitted by Graziano in support of his claim. Under the *de novo* standard of review, the Court is "tasked with evaluating whether the plan administrator make the correct decision." *See Chicco*, 2022 WL 973733, at *2. "In evaluating that decision, the Court's review [is] limited to the record available to the plan administrator on appeal. Its holding is therefore limited to the period covered by that record as well." *Id.* The Court will remand Graziano's claim for Unum to determine in the first instance whether Graziano is disabled under the terms of the plans from November 11, 2020, onward.

None of Graziano's grounds for exceptions are persuasive. First, even assuming Graziano's condition is permanent, the record does not reflect that his disability under either plan is permanent. The record is replete with references to treatments like physical therapy—which

39

now poses less of a health risk—that may provide relief. *See id.* at *2 (denying benefits post-administrative record because of absence of "same degree of certainty that [claimant] would remain disabled afterward given proper treatment."). While the Court credited Graziano's rationales for abstaining from physical therapy given the circumstances, it is skeptical that Graziano can maintain a disability claim going forward absent evidence of more consistent, appropriate treatment.

Nor has the passage of time prejudiced Graziano's ability to collect evidence to support his claim. Graziano applied for Social Security benefits after Unum's denial, suggesting he has been collecting materials documenting his disability. With a disability as debilitating as Graziano's, the Court would also expect that Graziano continued to receive treatment as necessary and could utilize those documents from the relevant time period to support his claim.

## CONCLUSION

For the foregoing reasons, the Court finds that Graziano is disabled within the meaning of the LTD Plan and LIP Waiver Plan from January 3, 2020, through the close of the administrative record on November 10, 2020. The Court awards judgment in Graziano's favor for LTD Plan and LIP Waiver benefits from January 3, 2020, through November 10, 2020, and remands the remainder of his claim to Unum to determine whether Graziano qualifies for benefits under both or either plan since November 10, 2020.

Dated: New York, New York
     July 12, 2023

SO ORDERED

_____
HONORABLE PAUL A. CROTTY
United States District Judge

40